911 A.2d 1264

Jane FARABAUGH, Individually and as Administratrix of the
Estate of Henry J. Farabaugh, Deceased, Appellee,

v.

PENNSYLVANIA TURNPIKE COMMISSION
and Trumbull Corporation, Appellants.

Supreme Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided Dec. 28, 2006.

48

Kenneth T. Newman, Esq., Louis C. Long, Pittsburgh, for Pennsylvania Turnpike Commission, et al.

Thomas A. Berret, Esq., Pittsburgh, for Jane A. Farabaugh.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BAER.

In December 1999, James Farabaugh (Decedent) suffered a fatal accident while driving an off-highway dump truck within the scope of his employment with New Enterprise Stone & Lime (NESL),[1] the general contractor on a construction site owned by the Pennsylvania Turnpike Commission (PTC). His wife and administratrix of his estate, Jane Farabaugh, plaintiff/appellee herein (Plaintiff), brought a wrongful death and survival action against PTC and the construction manager of the project, Trumbull Corporation (Trumbull), appellants herein, (collectively Defendants). After discovery, the trial court granted PTC's and Trumbull's motions for summary judgment. In an unpublished decision, the Commonwealth Court reversed summary judgment as to PTC, finding that issues of fact remained concerning the applicability of an exception to PTC's assertion of sovereign immunity. Additionally, the court reversed the summary judgment awarded to Trumbull, concluding that Trumbull owed a duty of care to Decedent and that a question of fact remained as to whether Trumbull's conduct was a substantial factor in causing Decedent's injury.

1. While not discussed in the briefs, we presume that Plaintiff did not bring negligence claims against NESL because it was subject to the Workers' Compensation Act as Decedent's employer.

██ We granted allowance of appeal limited to the following two questions:

> Whether the Commonwealth Court erroneously held that the Pennsylvania Turnpike Commission had a common law duty to warn the decedent's employer of any obvious conditions created by the general contractor?

> Whether guidance by the Supreme Court is necessary because the scope of a construction manager's duty to a contractor's employee is an issue of first impression in the Commonwealth? [2]

*Farabaugh v. Penna. Tpk. Comm'n and Trumbull Corp.*, 584 Pa. 160, 882 A.2d 1003 (2005). After reviewing the evidence and the relevant law, we reverse the Commonwealth Court in regard to PTC's motion for summary judgment, and conclude that Plaintiff failed to present a common-law cause of action sufficient to prevent summary judgment in favor of PTC, even

**2.** The Court specifically declined to hear issues relating to proximate cause and whether the real estate exception to the doctrine of sovereign immunity, 42 Pa.C.S. § 8522(b)(4), would apply to PTC. We nevertheless acknowledge that the language of Section 8522 presents some conceptual questions. Generally, sovereign immunity provides a bar against the assertion of any claim, thus preventing courts from reaching issues of duty or liability. However, Section 8522(a) grants an exception to sovereign immunity when "damages would be recoverable under the common law ... if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. § 8522(a). Thus, the statute invokes questions of duty and liability inherent in any question of recovery of damages under common law *prior* to a determination of the application of sovereign immunity. However, given the holdings of the courts below and the arguments of the parties on the issues granted review, we decline to speak to the mechanics of Section 8522. Instead, we limit our discussion of the procedural history and our analysis to the issues granted.

We additionally acknowledge that the question relating to PTC, as framed in our order granting review, does not engage fully the heart of Plaintiff's arguments below or the holdings of the lower courts, which focus on obvious dangers created by NESL, the general contractor, as well as non-obvious dangers inherent in PTC's land which were not created by the general contractor. As the parties discussed the issue ably, we recognize that the true question raised is whether Plaintiff has presented a cause of action against PTC with regard to either obvious or non-obvious dangers, sufficient to meet the requirements for exemption to sovereign immunity set forth in 42 Pa.C.S. § 8522(a). *See infra* at 7.

viewing the facts in a light most favorable to Plaintiff.[3]

In regard to Trumbull's motion for summary judgment, we refuse to apply an unduly rigid standard in determining the duty construction managers owe to employees of contractors and, instead, acknowledge that a construction manager's duty is defined by the intent of the contracting parties as reflected by their contractual designation of responsibilities. Under the relevant contract language, we conclude that Trumbull owed a duty of care to Decedent based upon its contractual obligation to perform safety inspections and other monitoring functions. A determination of the scope of the duty and whether this duty was breached, however, requires further development of the record regarding Trumbull's role on the jobsite and the proximate cause of the accident. Accordingly, we affirm the Commonwealth Court's reversal of summary judgment as to Trumbull and remand for further proceedings consistent therewith.

The accident in this case occurred during the construction of a section of the Mon/Fayette Expressway designed to link Interstate 70 in Fallowfield Township, Washington County, with Pennsylvania Route 51 in Jefferson Hills Borough, Allegheny County. PTC owned the site and employed Trumbull as the "construction manager." Under the terms of its contract with PTC, Trumbull was to administer, manage, and oversee the construction of several sections of the expressway. Its responsibilities included reviewing and monitoring the on-

3. Under well established law, an appellate court may disturb the decision of a trial court granting or denying summary judgment pursuant to Pa.R.C.P. 1035.1–1035.5 only if it determines that the trial court committed an error of law or abused its discretion. *See Strine v. Commonwealth of Pennsylvania, MCARE Fund,* 586 Pa. 395, 894 A.2d 733, 737–38 (2006). In considering summary judgment motions, both trial and appellate courts must view the evidence of record in a light most favorable to the non-moving party, and they should grant summary judgment only where the "record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 723 A.2d 174, 176 (1999). An issue is material if "its resolution could affect the outcome of the case under the governing law." *Strine,* 894 A.2d at 738. Accordingly, we present the facts of this case in a light most favorable to the Plaintiff as the non-moving party.

site safety procedures of the other contractors.[4] When viewed in a light most favorable to the Plaintiff, the record suggests that Trumbull's supervision encompassed haul roads, given testimony that Trumbull inspectors had authority to take action regarding safety violations on haul roads and that its inspectors had the authority to stop work if they perceived a dangerous condition.[5]

4. In relevant part, Trumbull's Open–End Inspection Agreement with PTC included Paragraph 12, entitled "Safety/Insurance," provides:

Safety and Insurance—*Develop, implement, maintain and monitor a comprehensive project safety/insurance program* in accordance with the "wrap-up" insurance guidelines. *Monitor each contactor and subcontractor for compliance with the contractors' insurance provisions in the contract document.* Quarterly safety/insurance review meetings will be required.

Open–End Inspection Agreement at 7 (emphasis added).

The Technical Proposal included Task 12 as one of the construction manager's tasks:

Safety is of paramount importance to [Trumbull] in every activity we perform. On the basis that PTC will purchase and maintain a "Wrap-up" insurance program for this project, we will provide a Safety/Insurance Monitor to oversee the program. Our Safety/Insurance Monitor will be PTC's agent and representative in matters of construction safety and the project Wrap–Up Insurance Policy at the worksite. *We will review and approve contractor emergency procedures and site safety plans, interview applicants for contractors' Safety Representatives, and make recommendations, monitor the Safety Representatives' performance, and monitor the contractors' compliance with OSHA and other applicable regulations at all work operations.* Monitoring will be frequent and on a regular schedule. We will organize monthly walk-through safety tours with PTC, Insurance carrier, and contractor representatives, and arrange and conduct other safety/insurance meetings as required. Through our Project Control System, we will develop and maintain a log of Worker's [sic] Compensation and General Liability Claims as well as maintain a file of all claim reports.

We will coordinate the investigation, reporting and follow-up of all claims submitted via PTC's chosen Insurance Program.

*We will continually monitor the performance of all contractors' workers and recommend removal from work any employee deemed unsuitable for reasons of safety and loss control.*

Technical Proposal attached to Open–End Inspection Agreement at 12 (emphasis added).

5. Plaintiff cites the contract between PTC and NESL, as stating "The [PTC], the [PTC's] Safety Representative, the Engineer, the Insurance Carrier ... or other authorized Safety Representatives have the authority to suspend work in progress when necessary to enforce mandatory safety requirements until the condition is corrected." PTC–NESL Con-

Decedent's employer, NESL contracted directly with PTC to be the general contractor of Section 52H of the project, which included the construction of an interchange with toll collection facilities. As part of the project, NESL constructed temporary unpaved haul roads, or access roads, to allow for the transport of materials from one section of the project to another. NESL did not have any contractual relationship with Trumbull and assumed all liability for injuries to its employees on site in its contract with PTC. NESL agreed that "acceptance of the [NESL's] Safety Program shall not relieve or decrease the liability of [NESL] for Safety." PTC–NESL Contract at 29. Additionally, NESL agreed that "[n]o provision of these contract documents shall act to make [PTC], the Engineer or any party other than [NESL] solely responsible for safety." *Id.*

On the afternoon of December 1, 1999, NESL asked Decedent, who usually drove water trucks on the site, to drive a loaded, heavy duty, off-highway dump truck up a hill on one of the haul roads even though he had never driven that type of truck on this worksite. Testimony revealed that Decedent was apprehensive about driving this type of truck, but nonetheless, he took the assignment. While Trumbull contends that Decedent drove off the road to avoid an on-coming grader despite having sufficient room to pass, Plaintiff asserts that the haul road collapsed because of the instability in the hill caused by coal seams.[6] Alternatively, Plaintiff alleged that the

tract at 27. Plaintiff cites the deposition of Thomas Carey, Trumbull's Project Manager, in which he testified that if a safety monitor noticed a dangerous condition on a haul road it would be reported and addressed. Joint Appendix to Plaintiff's Brief in Opposition to Defendant's Summary Judgment Motions (hereinafter, "Plaintiff's Appendix"), Exh. G at 34–35. While we must view the evidence in a light most favorable to Plaintiff at this stage in the litigation, we recognize that it will be in the factfinder's discretion to determine whether and to what extent these statements accurately reflect the situation on the worksite.

6. *See* Plaintiff's Appendix, Exh. D, Deposition Testimony of Richard McElhaney, a Trumbull safety monitor, at 72 ("We never determined if [the haul road] did collapse[,] reason being that when a truck fell over the edge, I mean it is hard to determine if it collapsed or if the damage to the side of the hill was caused from the vehicle itself."); Plaintiff's

haul road did not comply with necessary safety measures given, *inter alia,* an insufficient berm, the width and grade of the road, and the icy weather conditions. Regardless of the cause, Decedent suffered fatal injuries when the truck plunged down a twenty-eight-foot embankment and landed upside down in four feet of water.

In August 2000, Plaintiff filed a complaint against PTC and Trumbull asserting claims pursuant to Pennsylvania's Wrongful Death and Survival Acts, *see* 42 Pa.C.S. §§ 8301, 8302, alleging that Trumbull and PTC's negligence was a proximate cause of Decedent's death. Plaintiff alleged, *inter alia,* that PTC, as owner of the worksite, breached its common law duty to make the premises reasonably safe for the employees of the contractors, to furnish a work area free of recognized and observable hazards, to take necessary action to support and stabilize the haul road, and to require that the haul road be constructed, graded, maintained, and inspected properly. Plaintiff specifically alleged that the haul road should have been equipped with various safety features such as flaggers to direct traffic, barricades, or radio contact for the truck drivers. Plaintiff raised similar claims against Trumbull, again contending that Trumbull failed in multiple ways to require the proper construction and maintenance of the haul road and failed to inspect the road.

After extensive discovery, PTC and Trumbull filed motions for summary judgment. Initially, we will address all issues relating to PTC's summary judgment motion, turning our attention in Part II to Trumbull's motion.

## I. *PTC Summary Judgment Motion*

We reiterate that pursuant to our limited grant of allocatur we address only those aspects of the courts' decisions and the parties' arguments relevant to whether Plaintiff had a common-law cause of action against PTC. *See supra* at 2 n. 2. To highlight the significance of this question, we must consider it

Appendix, Exh. I, Union Township Police Department Report ("The Deceased drove the truck too close to the right hand edge of the roadway and the edge of the roadway gave away causing the truck to roll down a 30' embankment. . . .").

in the context of the entire case. In its summary judgment motion, PTC asserted the defense of sovereign immunity as a Commonwealth party. Any assertion of sovereign immunity, however, is subject to the exceptions provided in 42 Pa.C.S. § 8522:

§ 8522. Exceptions to sovereign immunity

(a) Liability imposed.—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, *does hereby waive,* in the instances set forth in subsection (b) . . ., *sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law* . . . *if the injury were caused by a person not having available the defense of sovereign immunity.*

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \* \*

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency. . . .

42 Pa.C.S. § 8522 (emphasis added). The question this Court accepted for review concerns subsection (a) of Section 8522—whether under these facts Plaintiff could assert a common-law cause of action against a party, who unlike PTC, did not have available the defense of sovereign immunity.

After PTC asserted the defense of sovereign immunity in its motion for summary judgment, Plaintiff alleged that the case fulfilled the requirements of the exception set forth in Section 8522(a). She maintained, generally, that a common law cause

of action sounding in negligence could be asserted against a non-Commonwealth landowner based on a landowner's duty to the employees of an independent contractor. While the theories underlying the alleged duty tend to overlap and blend in the parties' arguments and the lower courts' discussions, we nonetheless distill three potential bases for the duty asserted by Plaintiff. For ease of discussion, we refer to each theory by reference to the related section of the Restatement (Second) of Torts: (1) Section 343, Dangerous Conditions Known To or Discoverable By Possessor; (2) Section 414, Negligence in Exercising Control Retained By Employer; and (3) Sections 416 and 427, collectively referred to as the Peculiar Risk Doctrine.[7] Conversely, PTC argued that even a landowner not subject to sovereign immunity would be shielded from liability under established Pennsylvania law, which generally does not impose a duty on a landowner employing an independent contractor, absent certain exceptions.

In May 2002, the trial court entered an order granting PTC's motion for summary judgment, finding that Plaintiff failed to set forth a claim, recognized at common law, upon which relief could have been granted against a non-Commonwealth party landowner sufficient to satisfy the requirements for an exception to sovereign immunity set forth in Section 8522(a). Without fully considering the first potential theory of duty related to Section 343 (Dangerous Conditions), the court concluded that Plaintiff failed to demonstrate that PTC retained the control over the job site necessary to establish a duty under Section 414 (Retention of Control). The court focused on the language of the contract between NESL and PTC, under which NESL agreed to assume responsibility for all injuries to its employees. Likewise, regarding the third potential source of duty pursuant to Section 416 or 427, the court concluded that the facts of the case, as a matter of law,

7. Plaintiff additionally claimed that PTC's duty could arise under Section 324A of the Restatement (Second) of Torts, (entitled "Liability To Third Person For Negligent Performance Of Undertaking"). While the other three theories remain subject to dispute as discussed in detail, *infra,* the allegation under Section 324A was not addressed by either of the courts below or the parties before this Court. Consequently, we do not address that issue further in relation to PTC.

failed to establish the presence of a peculiar risk, where Decedent merely drove a dump truck on a haul road, a routine method of transporting material around a highway construction site.

Plaintiff appealed the decision to the Commonwealth Court. Although that court's decision focused primarily on issues relating to Trumbull, the Commonwealth Court briefly addressed the merits of PTC's motion for summary judgment. While the court concluded that Plaintiff stated a claim of injury due to a "defective condition of the land" sufficient to satisfy the requirement for the real estate exception to sovereign immunity under subsection (b)(4) of Section 8522,[8] it did not specifically address Plaintiff's argument regarding dangerous conditions in the land in relation to subsection (a), where Plaintiff asserted that a common law cause of action could arise from a breach of a duty to protect Decedent from a nonobvious dangerous condition inherent in the land, *see* RESTATEMENT (SECOND) OF TORTS § 343. Instead, the court determined that Plaintiff satisfied Section 8522(a) by demonstrating that it exerted sufficient control over the worksite, after considering caselaw related to Section 414. The court based its finding of sufficient control on a safety videotape shown to workers, *see infra* at 14 n. 11, and PTC's appointment of on-site safety inspectors. Additionally, the court concluded that PTC "was charged with the same degree of control as Trumbull exercised," because Trumbull was PTC's "agent" in performing safety checks.[9] Based on the factual issue of control pursuant

8. As noted previously, this Court did not grant review of PTC's issue relating to the real estate exception in 42 Pa.C.S. § 8522(b).

9. In a footnote, the court considered Plaintiff's claim that she could fall within the exception to the rule that landowners who do not exert control over the land cannot be liable for worker's injuries under Section 414. As discussed *infra*, the exception is based on the peculiar risk doctrine of Sections 416 and 427 of the Restatement. Although the court did not need to address the exception given that it found in Plaintiff's favor in regard to the Section 414 issue, it nonetheless concluded that Plaintiff did not establish a peculiar risk or dangerous condition because haul roads are a standard aspect of highway construction sites. Plaintiff has not appealed from this determination, presumably because the Commonwealth Court granted the relief she sought. *See Hosp. & Health Ass'n of Pennsylvania v. Dept. of Public*

to Plaintiff's Section 414 (Retention of Control) claim, the Commonwealth Court reversed the trial court's grant of summary judgment to PTC, concluding that Plaintiff avoided the application of sovereign immunity.

On appeal to this Court, PTC asserts that the Commonwealth Court erred in reversing the trial court's grant of summary judgment. PTC contends that the Commonwealth Court erred in failing to find sovereign immunity applicable as a matter of law. In doing so, PTC reasserts many of the issues contested in the courts below. We address the parties' arguments on the potential application of each assertion of duty of a non-Commonwealth landowner to an employee of an independent contractor under the facts of this case, keeping in mind that our finding of an applicable duty would allow Plaintiff to assert a common law cause of action in negligence necessary to satisfy Section 8522(a)'s requirements for an exception to sovereign immunity, and thus prevent a grant of summary judgment in favor of PTC.

### 1. Section 343: Dangerous Conditions Known or Discoverable By Possessor

█ Plaintiff asserts the existence of a common-law cause of action in this case based on the general law imposing a duty of care on possessors of land to business invitees, such as the employees of independent contractors, where a non-obvious, dangerous condition exists on the possessor's land. As developed through our caselaw, a landowner's duty regarding such conditions derives from Section 343 of the Restatement (Second) of Torts.[10] *See, e.g., Crane v. I.T.E. Circuit Breaker Co.,* 443 Pa. 442, 278 A.2d 362, 363 (1971); *Engle v. Reider,* 366 Pa.

---

*Welfare, Commonwealth of Pennsylvania,* 585 Pa. 106, 888 A.2d 601, 607 n. 11 (noting that party that is not aggrieved by a court's ultimate decision is not required to file an appeal or cross-appeal). Accordingly, we do not consider that Plaintiff has waived this issue, and therefore, we address the potential application of the exception because it remains a significant aspect of PTC's argument in favor of summary judgment, *see infra* at 18.

**10.** § 343. Dangerous Conditions Known To Or Discoverable By Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

411, 77 A.2d 621, 625 (1951). Plaintiff alleges that the dangerous condition inherent in the land was the instability of the hillside on which the haul road was constructed due to the existence of coal seams. Deposition testimony, at least for purposes of summary judgment, can be read to support Plaintiff's position that the area contained coal seams, which she alleges could have caused the haul road to collapse given that coal seams provide insufficient support for roadways. Accordingly, Plaintiff argues that she would have a common-law cause of action sounding in negligence against a non-Commonwealth landowner based on its breach of a duty to protect Decedent from the inherent and non-obvious danger of the instability of the hillside upon which NESL built the haul road.

In response, PTC cites cases, *see, e.g., Engle,* 366 Pa. 411, 77 A.2d 621, holding that liability for injuries to a contractor's employee will not attach when the owner warns the contractor of the dangerous condition because there is no reason for the landowner to "expect that [the contractor] will not discover or realize the danger," RESTATEMENT (SECOND) OF TORTS § 343(b). Additionally, the duty to warn the contractor, according to PTC, is only triggered if the owner has superior knowledge to the contractor regarding the relevant danger or risk. In this case, PTC argues that NESL was well aware of the danger presented by the alleged coal seams because it was the party responsible for excavating the seams adjacent to the haul road. Accordingly, PTC contends that it did not owe a duty to Decedent pursuant to Section 343(b).

 In any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965).

*See R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005). The question before the Court presents a question of law regarding the duty imposed upon PTC under the facts of this case. *See id.* The courts of this Commonwealth have spoken to the duty possessors of land have toward the employees of contractors. In cases where a possessor of land employs an independent contractor, this Court has concluded that a possessor of land must use "reasonable care to make the premises safe or give adequate and timely warning of dangers known to him but unknown to the contractor or his employees." *Crane*, 278 A.2d at 364 (citations omitted); *see also Engle*, 77 A.2d at 624. "However, the possessor of the land can insulate himself from liability by warning the contractor of the existence of any dangerous conditions on the premises which he knows or should know, and need not warn the contractor's employees." *Id.* Moreover, a possessor will not be held responsible for defective conditions of the land if they are the product of the independent contractor's work. *Id.*

Accordingly, Plaintiff's first assertion of a duty, upon which a cause of action could be asserted against PTC if it were a non-Commonwealth party for purposes of the sovereign immunity exception set forth in 42 Pa.C.S. § 8522(a), must be rejected as lacking the requisite factual predicate under the rule set forth in *Crane* and *Engle*. It is without debate that NESL, Decedent's employer, was fully aware of the potential, non-obvious danger of the alleged instability of the hillside due to the presence of coal seams, given that it was the party responsible for the removal of coal seams nearby. Similarly, to the extent that Plaintiff's allegations can be read to assert non-obvious dangers present in the haul road itself, we find no liability may attach to PTC in this regard, as it is factually undisputed that those conditions would be the product of NESL's construction and maintenance of the haul road. *See Crane*, 278 A.2d at 364.

### 2. *Section 414. Negligence in Exercising Control Retained By Employer*

■ Plaintiff acknowledges that, generally, landowners employing independent contractors are exempt from liability for

injuries to an independent contractor's employees absent an exercise of control over the means and methods of the contractor's work, *see, e.g., Celender v. Allegheny County San. Auth.*, 208 Pa.Super. 390, 222 A.2d 461, 464 (1966) (quoting Restatement (Second) of Torts § 414).[11] Plaintiff claims that PTC demonstrated its control over the site through a safety orientation videotape shown to all employed on the site asserting that PTC's representatives would be "looking after your interests as well as the owner's." [12] She also asserted that PTC retained control by employing an on-site safety inspector as well as contracting with Trumbull for construction management services. She argues that this was not the typical situation of a property owner visiting a construction site to check on the progress, which has been determined not to

11. Section 414. Negligence In Exercising Control Retained By Employer

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). However, comment (c) limits the imposition of liability:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*

*Id.* (emphasis added).

12. The videotape provided, in relevant part:

> While on the job you will also note there are other people visiting the job site. Many of these will be making audits of the safety efforts on your job. They may represent the owner, a governmental agency, the insurance carrier, construction manager, or consultants to the owner. All of these parties are looking after your interests as well as the owner's. When unsafe conditions are found and suggestions are made for reducing hazards, please keep in mind that the suggestions are made for the benefit of us all.

Plaintiff's Appendix, Exh. F, Transcript of Videotape.

constitute control, but instead involved an owner who employed its own on-site safety representative who had the authority to stop work. Plaintiff asserted that at the very least, a jury issue existed as to whether PTC retained sufficient control to prevent summary judgment on the sovereign immunity exception.

PTC contends that Plaintiff failed to establish control necessary to trigger a duty from which a common-law cause of action could arise. In support, PTC relies upon caselaw holding that an owner's reservation of rights to inspect the work or even to stop work does not satisfy the necessary control element. *See Celender*, 208 Pa.Super. 390, 222 A.2d 461. Rather, PTC contends that the caselaw requires demonstration of control over how the contractor performs the assigned tasks. PTC maintains that the logic behind this rule is to allow an owner to rely upon the contractor's expertise in the construction project.

In support, PTC cites the recent Commonwealth Court decision in *LaChance v. Michael Baker Corp.*, 869 A.2d 1054 (Pa.Cmwlth.2005), which it asserts conflicts with the decision of the Commonwealth Court *sub judice*. In *LaChance*, the Commonwealth Court addressed a claim of liability in a case where the property owner, the Pennsylvania Department of Transportation (PennDOT), had the power to supervise, inspect, and stop its contractor's work. The court concluded that liability did not attach because "PennDOT's inspection rights, exercised to assure itself that [the contractor] performed its work safely, as [the contractor] had agreed in its contract, did not make PennDOT guarantor of the safety of [the contractor's] employees." *Id.* at 1060–61. In applying the law to the facts of the case, PTC asserts that it did not control the means and methods of construction of the haul road or the decision to assign the fatal task to Decedent, which it contends were entirely under the control of NESL, who designed, built, and maintained the haul road at issue. Thus, it argues that summary judgment based on sovereign immunity was appropriate.

In *Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 189 A.2d 271 (1963), we considered the specific duties of property owners in cases where an owner turns over control of its property to an independent contractor. Initially, we observed, "[o]rdinarily one who engages an independent contractor is not responsible for the acts of such independent contractor or his employees" because "a person is not liable for the acts of negligence of another" absent a master and servant relationship; "[r]esponsibility goes with authority." *Id.* at 277. Accordingly, "[a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty of care to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor." [13] *Id.; see also Brletich v. U.S. Steel Corp.*, 445 Pa. 525, 285 A.2d 133, 134 (1971). So long as the owner is out of control of the land, no duty is placed on the owner. *Id.*

In considering whether an owner has retained control by monitoring the work site, this Court stated, "It is normal for an owner or an interested party to visit the scene of new construction to observe the progress of work. Such inspections of finished work furnish no evidence of a right to control the workmen. . . . [I]nspection of finished work shows only an interest in the result to be obtained." *Hader*, 189 A.2d at 278 (citations omitted). Accordingly, we found frequent visits of plant managers "innocuous" when there was "not a scintilla of evidence that either [the plant manager or vice-president] at any time gave, or attempted to give, any instructions as to the manner of installation of the [equipment at issue]." *Id., see also Emery v. McCollum*, 725 A.2d 807, 813 (Pa.Super.1999) (finding that owner's employment of liaison to monitor compliance with contractual provisions did not constitute assumption of control over the contractor's work); *Celender*, 222 A.2d at 463 (quoting RESTATEMENT (SECOND) OF TORTS § 414, *supra*, at

13. As discussed above, an owner may be liable for injury resulting from a *non-obvious* condition absent adequate warning to the independent contractor. Similarly, an owner may be liable if the dangerous condition constitutes a "special danger" or "peculiar risk" as described below.

14 n. 11, for the proposition that mere ability to order work stopped to inspect progress or to make recommendations for alterations does not constitute control). Similarly, as noted by PTC, the Commonwealth Court in *LaChance* found that Penn-DOT did not exert the necessary control over the worksite merely by including in its contract a provision retaining the right of inspection and the authority to suspend work.

Based on this caselaw, we reject Plaintiff's attempt to argue that there is a genuine issue of material fact concerning PTC's retention of control of the worksite by way of the videotape, its provisions for safety inspections, or its employment of Trumbull, given the well-established law of this Common-wealth that such actions do not constitute control. As the Commonwealth Court held in *LaChance*, "[t]o find liability simply because PennDOT addresses the issue of safety in its construction contracts would only encourage PennDOT to disregard safety in its contracts. Sound public policy, howev-er, dictates that PennDOT monitor the safety of its highway construction projects and continue to pay its contractors to conduct safe job sites." *LaChance*, 869 A.2d at 1064. It would likewise disserve public policy to impose liability on PTC for going one step further and hiring a contractor specifically to supervise safety issues on site in addition to requiring its general contractor to be responsible for safety under its own contract with PTC. Instead, we conclude that under NESL's contract with PTC, PTC turned over control of the worksite to its general contractor, NESL, and did not retain control over NESL's means and methods for purposes of a Section 414 analysis. *See Hader*, 410 Pa. 139, 189 A.2d 271.

### 3. *Sections 416 and 427: the Peculiar Risk Doctrine*

■ In the event that the courts concluded that PTC did not retain control, Plaintiff asserted [14] that the facts of the

14. We note that Plaintiff does not develop an argument before this Court in response to PTC's argument that the case does not fit within the Peculiar Risk Doctrine, despite the fact that both lower courts found against her. Nonetheless, it remains a significant aspect of PTC's analysis, as discussed *supra* at 10 n. 9. In rejecting the application of

case fit within the doctrine of peculiar risks or special dangers—an exception to the doctrine of non-liability for owners out of possession.[15] Plaintiff relied on the Superior Court decision in *McDonough v. U.S. Steel Corp.*, 228 Pa.Super. 268, 324 A.2d 542 (1974), in which the court found the owner liable based on the peculiar risk inherent in the decedent's task of driving an off-highway dump truck on the edge of an unstable fifty-foot-high pile of ore at night without proper lighting. Plaintiff alleged that the facts of this case fit within the *McDonough* analysis in that the work site did not contain the necessary safety precautions for a similar off-highway dump truck where, *inter alia*, the road was improperly graded, lacked appropriate visual markers of the road edge, and was located adjacent to an excavated area.[16]

PTC contended that it does not fit within the exception because the peculiar risk or special danger must be foreseeable at the time the contract is executed and not within the usual and ordinary risk associated with the general type of work. *See Emery*, 725 A.2d at 814. PTC asserts that it was

the doctrine, we draw her argument from her pervious filings included in the certified record.

**15.** § 416. Work Dangerous In Absence Of Special Precautions

One who employs an independent contractor to do *work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm* to others unless special precautions are taken, *is subject to liability* for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, *even though the employer has provided for such precautions in the contract or otherwise.*

RESTATEMENT (SECOND) OF TORTS § 416 (1965) (emphasis added)

§ 427. Negligence As To Danger Inherent In The Work

One who employs an independent contractor to do *work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work,* or which he contemplates or has reason to contemplate when making the contract, *is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.* *Id.* § 427 (1965) (emphasis added).

**16.** Plaintiff failed to address the Superior Court's discussion that the fact that tipped the scale in *McDonough* was the lack of proper lighting, finding that the facts would have not presented a peculiar risk for a driver during a daytime shift, in a case involving substantially more risk than was present on NESL's haul road. *McDonough*, 324 A.2d at 547.

not foreseeable that NESL would construct an allegedly faulty haul road or choose an unqualified party to drive the truck. Moreover, PTC maintains that all construction work includes some degree of risk and that driving a truck on a haul road is not an unusual risk on a highway construction site. Accordingly, PTC asserts that this exception does not apply and, thus, summary judgment based on sovereign immunity is appropriate.

We previously have summarized the rule presented by Sections 416 and 427 of the Restatement: "the employer remains liable for injuries resulting from danger which he should contemplate at the time he enters the contract, and cannot shift to the contractor responsibility for such dangers, or for taking precautions against them." *Brletich,* 285 A.2d at 136. We further noted that the peculiar risk/special dangers provisions are not intended to apply to "the taking of routine precautions of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work." *Id.* at 137. We held that so long as the employer exercises reasonable care in selecting a competent contractor, liability for failing to take precautions will not attach. *Id.* As summarized by the Superior Court, the exception requires a "two-fold test: (1) whether the risk is foreseeable to the owner at the time the contract is executed ... and (2) whether the risk is different from the usual and ordinary risk associated with the general type of work done." *Emery,* 725 A.2d 807, 814 (Pa.Super.1999).

We conclude that under the facts presented here, there was no peculiar risk or special danger involved in the task of driving an off-highway dump truck on a highway construction site. We reject Plaintiff's reliance on *McDonough. See supra* at 19 n. 16. Not only did the accident in this case occur during a routine event on a construction site, but even under the significantly more dangerous facts of *McDonough,* which involved the task of driving a truck close to the edge of an inherently unstable pile of ore, the court only found liability where the nature of the task required it to be performed at

night. Any responsibility for improper construction or maintenance of a standard feature of a highway construction project must lie with NESL, or as explained below, with Trumbull. By finding that the Peculiar Risk Doctrine does not apply to this case, we conclude that PTC has no duty to the employees of NESL, the general contractor that assumed control of the worksite pursuant to its contract with PTC.

Consequently, after review of all Plaintiff's asserted bases for a duty owed by PTC to Decedent, we conclude that summary judgment in favor of PTC is appropriate absent a duty pursuant to which a common-law cause of action sounding in negligence could be brought against a similarly situated party not protected by sovereign immunity. *See* 42 Pa.C.S. § 8522(a).

## II. *Trumbull Summary Judgment*

In its summary judgment motion, Trumbull asserted that, as a construction manager, it owed no duty to Decedent, whose death resulted from allegedly negligent construction and maintenance of the haul road by NESL. In support, Trumbull observed that this Court in *Leonard v. Commonwealth Dept. of Transp.*, 565 Pa. 101, 771 A.2d 1238, 1241–42 (2001), refused to impose liability where a general contractor did not exercise control over the worksite and the injured worker's employer assumed responsibility for safety compliance. Trumbull focused on this Court's reasoning that responsibility should lie with the party actually performing the work where that party has immediate knowledge of the potential hazards of the work. According to Trumbull, NESL, not Trumbull, assumed sole responsibility in its contract with PTC for the safety of NESL's employees on the site. Accordingly, it argued that it should not be held liable for the accident where it had no control over the construction or maintenance of the haul road or the decision to employ Decedent.

Plaintiff responded that the *Leonard* line of cases was inapplicable because the question was not one of liability based on control over the worksite, but instead of liability for negligent performance of contractual duties. Plaintiff noted

that Pennsylvania courts have imposed a legal duty, some-times referred to as a social duty, on contracting parties to perform their contractual obligations so as not to injure third parties, citing *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961). Under this caselaw, a plaintiff may bring a cause of action sounding in tort based upon a defendant's negligent performance of contractual obligations owed to another party. Plaintiff notes that the principal established in *Otis Elevator* has been formalized in Section 324A of the Restatement (Second) of Torts.[17] *See Cantwell v. Allegheny County*, 506 Pa. 35, 483 A.2d 1350 (1984).

Plaintiff argued that Trumbull had assumed a duty of care to Decedent to perform its contractual obligations to provide safety oversight and inspection services in a manner that did not compromise the safety of the workers on the worksite. Plaintiff contended that Trumbull's failure to exercise reason-able care in performing the services owed under its contract with PTC resulted in Decedent's injury. In support, Plaintiff submitted an expert report suggesting that Trumbull failed to perform its contractual duties as construction manager in relation to the haul road.[18] Moreover, Plaintiff contended that

**17.** § 324A. Liability To Third Person For Negligent Performance Of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
RESTATEMENT (SECOND) OF TORTS § 324A.

**18.** The report described the expert's view of proper actions by construc-tion managers:

A construction manager must inspect the works on the project on a continuous basis and immediately address any non-compliance with any applicable local, state and federal regulations. As a professional representing the owner, it is the [construction manager's] duty to make sure all applicable safety procedures are followed when con-

Decedent relied upon the assertion in the safety videotape that safety inspectors, such as Trumbull, were "looking after your interests as well as the owner's [interests]."

In addressing Trumbull's motion for summary judgment, the trial court acknowledged Plaintiff's argument that Trumbull's duty arose from its contractual obligations, but, nevertheless, focused its analysis on whether Trumbull exercised control over the means and methods used by NESL to construct and maintain the haul roads. Applying the law relating to possessors of land discussed in relation to PTC's argument and this Court's decision in *Leonard*, the trial court found that the evidence showed that Trumbull did not exercise control over the means or method of NESL's work, and thus could not be held liable. Instead, it found that NESL had assumed sole responsibility for the safety of its workers in its contract with PTC.

The court briefly addressed Plaintiff's argument for imposing a social duty to perform contractual obligations so as not to harm third parties. It distinguished the case relied upon

> struction activities are in progress. It is mandatory that he not only inspect the work being performed but also how it is being done. Although the means and methods of construction are the responsibility of the trade contractor, it does not relieve the [construction manager] of his duties to make sure that such means and methods are safe and will not result in injury or death of anyone on the project.

Expert Report at 1, Exh. N of Plaintiff's Appendix. The expert also opined on Trumbull's performance of its contractual duties of inspection:

> The [construction manager] admits to infrequent inspections. Claims [sic] that the haul road being a temporary structure did not warrant full safety compliance review. He admits to traveling on haul roads and yet fails to notice steep grades, narrow width, faulty super elevation, lack of proper drainage, and the absence of a safety berm. He further pays no attention to hazardous weather conditions specifically on the day of the accident despite concern expressed by many employees.... To state in the depositions that the [construction manager's] role was only to review and approve the contractor's safety plan proves that the [construction manager] either did not understand the proper role of a Construction Manager, or was guilty or dereliction of his duties, resulting in the unfortunate and wrongful death of [Decedent].

*Id.* at 2. Plaintiff noted that Trumbull did not present an expert report in opposition.

by Plaintiff, *see St. Clair v. B & L Paving Co.*, 270 Pa.Super. 277, 411 A.2d 525 (1979). The court concluded that the defendant in *St. Clair* had created an artificial condition of uneven pavement that led to the injury suffered by the third party, whereas Plaintiff merely alleged that Trumbull failed to inspect properly the condition created by NESL. The court dismissed this argument, concluding that the potential negligent conduct was that of NESL and was not connected to an alleged breach of Trumbull's contractual duty, without acknowledging the expert report submitted by Plaintiff.

On appeal, the Commonwealth Court acknowledged that Trumbull asserted a lack of control over the allegedly negligent construction of the haul road, but found that Trumbull had a contractual duty to inspect and supervise the project, which included inspection of haul roads. The court concluded that negligent failure of its contractual obligation to inspect could trigger a duty to third parties such as Decedent sounding in tort. Cmwlth. Ct. Slip Op. at 5 (citing *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961)). Moreover, it concluded that material questions of fact remained concerning whether Trumbull performed its duty adequately, given the testimony and the expert report's references to potential safety concerns regarding the haul road. "[T]he Court determine[d] that Trumbull owed a duty to Decedent and that the trial court erred in holding otherwise. The extensive contractual commitments by Trumbull are rendered a nullity if it is held that Trumbull had no enforceable safety obligations." Cmwlth. Ct. Slip Op. at 11 (citation omitted).[19]

On appeal to this Court, Trumbull seeks our determination of the scope of a construction manager's duty to employees of other contractors. Trumbull attempts to define the role and responsibilities of a construction manager by citation to the Construction Management Association's definition of construction management as the "process of professional management

19. Although not before this Court, we note that the Commonwealth Court found that Plaintiff had sustained her burden in part by presenting evidence of a question of material fact regarding whether Trumbull's conduct was a substantial factor in Decedent's accident.

applied to a construction program from conception to completion for the purpose of controlling time, costs, and quality." Defendants Brief at 17. Under its contract with PTC, Trumbull contends it was merely responsible for monitoring the contractors' compliance with their own safety plans. Indeed, Trumbull asserts, the safety plans submitted by NESL did not even mention haul roads.[20]

Asserting that its role involved mere oversight, Trumbull argued for application of the law this Court has applied to possessors of land and general contractors out of possession of property. *See Hader*, 410 Pa. 139, 189 A.2d 271; *Leonard*, 565 Pa. 101, 771 A.2d 1238. It asserts that it did not control the means and methods of the activities related to the accident in this case, and thus, should not be liable for the resultant injury. Instead, Trumbull notes that NESL took full responsibility for any liability resulting from its work. Accordingly, Trumbull argues that it was entitled to summary judgment because it owed no duty to Decedent in regard to the safety of the haul roads or the decision to assign him the task that eventually led to his death.

Trumbull rejects Plaintiff's attempt to impose liability based on its contractual responsibilities. Without directly addressing *Otis Elevator*, Trumbull argues that liability under Restatement Section 324A only applies to "sins of commission." Additionally, Trumbull contends that Plaintiff did not satisfy any of the three triggering situations set forth in Section 324A (a-c) because she failed to demonstrate that (a) Trumbull's "failure to exercise reasonable care increase[d] the risk of such harm;" (b) "Trumbull had undertaken to perform a duty owed by [PTC] to [Decedent]" or (c) that "the harm [was] suffered because of reliance of [PTC] or [Decedent] upon the undertaking." *See* RESTATEMENT (SECOND) OF TORTS § 324A. Trumbull asserts that negligent inspection cannot meet the requirements for a duty under Section 324A. Accordingly, Trumbull

---

**20.** This assertion begs the question concerning whether Trumbull satisfied its obligation to review safety plans by approving a safety plan that did not address haul roads, a standard feature of a highway construction site. That issue is not before this Court, but potentially may arise during trial.

argues that summary judgment was appropriate because it did not owe Decedent a duty of care.

In response, Plaintiff asserts that the precedent reflected in *Leonard* does not apply to the case at bar. In contrast to the situation addressed in *Leonard*, Plaintiff argues that this case does not involve an owner relinquishing control over the construction site or a general contractor releasing control over the means and method of the work. Instead, according to Plaintiff, this case involves the assumption of a contractual duty of inspection that was not and could not be delegated to the other contractors. Even though NESL assumed responsibility for the safety of its workers, that responsibility did not relieve Trumbull of its safety and monitoring obligations under the contract with PTC. According to Plaintiff, if Trumbull could delegate all safety responsibilities to the trade contractors, there would be little need for PTC to employ Trumbull to supervise the safety procedures.

Instead, Plaintiff contends that a construction manager is subject to the same principles of duty as any other professional on a construction worksite. Relying on *Otis Elevator*, she maintains that the courts of this Commonwealth have imposed a social duty on contracting parties to act without negligence when it is foreseeable that third parties could be injured by the negligence.[21] She rejects Trumbull's argument that Section 324A only applies to sins of commission, noting that courts have applied a companion section, Section 323 with similar language, to sins of omission. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). Plaintiff maintains that Trumbull's contractual responsibilities triggered a social duty to Decedent in this case. According to Plaintiff, Trumbull was responsible under its contract for ensuring that the various contractors complied with the safety plans that Trumbull had approved as compliant with the requirements set forth by PTC. Plaintiff finds that "[i]t is inconceivable that Trumbull

---

21. Plaintiff also contends that Decedent was an intended beneficiary to the contract. As we find that Plaintiff established Trumbull's duty to perform its contractual duties in a non-negligent manner sufficient to prevent summary judgment, we do not discuss the potential application of the law relating to intended beneficiaries.

did not understand that its role was to assure the safety of the workers on the job, regardless of who employed them." Applying Section 324A(c), Plaintiff argues that Decedent reasonably relied upon the promise made in the videotape that Trumbull would look after the employees' interests as well as the owner's interest. She also asserts that reasonable minds could differ on the question of whether Trumbull's failure to correct the alleged flaws in the haul road contributed to or caused the accident.

Plaintiff argues that the issue of whether Trumbull fully performed its obligations under the contract is an issue for the factfinder, and thus not appropriate for summary judgment. Nonetheless, she highlights the report of her expert who opined that Trumbull "failed in the performance of [its] contractual duties in keeping with accepted industry practices ... and failed to enforce basic safety practices by trying to limit [its] role to that of a reviewer instead of enforcing contractual and mandated safety regulations." Plaintiff's Brief at 24.

We granted allowance of appeal in part to consider whether this Court could define the duty, if any, that construction managers owe to employees of other contractors. Initially, we reject Trumbull's attempt to graft the analysis used for general contractors and possessors of land onto construction managers. The *Leonard* and *Hader* lines of cases relate to situations where an employer reserves the right to supervise and inspect an independent contractor. These cases consider whether and to what extent the owner or general contractor has delegated responsibility for the work on the property to a subcontractor. In contrast, the case at bar does not involve the delegation of responsibility from Trumbull to NESL, but rather the assumption of responsibilities. Trumbull and NESL did not have a contractual relationship; instead, each had contractual obligations to PTC. While we acknowledge NESL's uncontested assumption of liability for injuries sustained by its employees, we cannot ignore Trumbull's positive assumption of responsibility to inspect and supervise the safety procedures on the work site.

Finding the *Hader* and *Leonard* line of cases inapplicable, we next consider whether we can define generally the appropriate role and resultant duty of construction managers. While the parties assert that the position of construction manager is a relatively new position, this Court has considered the role before. In *Malloy,* this Court exempted construction managers from compliance with the competitive bidding process that is statutorily required for more typical construction services. *Malloy,* 540 Pa. 308, 657 A.2d 915, 920 (1995). We described the role of a construction manager as "go[ing] directly to the overall success of the project to see that the contract is fully complied with as to the quantity and quality of material and workmanship" and viewed the role of a construction manager to be more similar to that of an architect and other professional services for which quality of service is of paramount concern.

While the holding of *Malloy* has little application to the question currently before us, it nonetheless is demonstrative of why we cannot create a defined duty for all construction managers. In summarizing the contractual duties of the construction manager in *Malloy,* Mr. Justice Castille thoroughly surveyed the contractual duties at two stages of the construction project, yet did not mention any obligation regarding safety inspections—an obligation central to the issue in this case and fully addressed in the contract between PTC and Trumbull. *See Malloy,* 540 Pa. 308, 657 A.2d 915, 919–920 (1995).

Similarly, our decision in *Marshall v. Port Auth. of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990),[22] demonstrates the diversity among the contractual responsibilities of construction managers. In *Marshall,* an injured employee of the general contractor on a Port Authority construction project brought suit against the Port Authority and the engineering firm that provided construction management services. In finding that

**22.** A five-member court decided the case, with Justices McDermott and Zappala joining Justice Flaherty's majority opinion while Justice Larsen joined Justice Papadakos' dissenting opinion. Chief Justice Nix and Justice Stout did not participate in the decision.

the engineering firm did not have a duty to protect the employee in that case, we scrutinized the language of various amendments to the contract between the engineering firm and the Port Authority. The majority concluded that the applicable amendment did not impose a duty to inspect the site and ensure the safety of the workers because the firm was responsible not for assuring compliance with safety procedures but with "assur[ing] delivery of the specified systems and facilities in accordance with contract drawings and specifications." *Id.* at 936. We concluded that the firm was responsible for the end result, not safety procedures. Additionally, the majority recognized that other provisions of the contract relegated the firm's on-site safety role to passive duties such as the collection of written safety programs and reports rather than an active duty to inspect the jobsite. *Id.* at 937. The court noted that this was in contrast to a prior version of the contract that did provide for a more active role, requiring the firm to review "contractors' practices and procedures to minimize hazards associated with construction operations." *Id.* at 9, 568 A.2d at 936.

Accordingly, given the differences between Trumbull's contract in this case, the versions of the contracts in *Marshall*, and the contract in *Malloy*, we decline to provide a rigid definition of a construction manager or impose a correspondingly static duty on all construction managers. Instead, we find it preferable to allow owners and construction managers to define their roles and responsibilities in each contract according to the needs of each project and leaving courts to consider on a case by case basis whether such responsibilities trigger a duty to other workers on the jobsite.

Pursuant to this holding, we must review the obligations Trumbull incurred in its contract with PTC and consider whether those obligations result in a duty to Decedent to perform the contractual obligations owed to PTC in a non-negligent manner. Unlike the passive responsibility evidenced in the applicable version of the contract in *Marshall*, Trumbull was paid to assume an active role in assuring safety on the worksite, agreeing to "develop, implement, maintain

and monitor a comprehensive project safety/insurance program." *See* Open End Inspection Agreement, *supra,* at 4 n. 4. Moreover, Trumbull asserted that it considered safety of "paramount importance" and, rather than suggesting a passive role in safety compliance, it agreed to interview applicants to be the contractors' safety representatives and monitor their performance and "monitor the contractors' compliance" with safety regulations on a "frequent" and "regular schedule." *See* Technical Proposal, *supra,* at 4 n. 4. It would not be appropriate, however, for us to determine exactly what Trumbull was expected to do to comply with the responsibilities it assumed. Indeed, we believe the inquiry regarding what level of review and inspection the parties intended should be left to the factfinder who will have the opportunity to consider the testimony of the parties and the parties' experts.[23]

 Despite factual questions regarding the details of Trumbull's safety responsibilities, we may still consider whether the general safety obligations assumed in the contract could trigger a duty to others on the jobsite actionable in tort. It has long been the law of this Commonwealth that a contracting party may owe a duty, imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third parties:

> Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2nd ed.1955), § 85, pp. 514–519. It is not the contract *per se* which creates the duty; it is the law which imposes the

**23.** The inquiry on remand may also call for an examination of the contractual obligations of other parties on the site. *See Marshall,* 568 A.2d at 936 ("[W]hen construing a contract which by necessary implication refers to another document, the other document may be looked to for evidence of surrounding circumstances in an effort to ascertain the intention of the parties.")

duty because of the nature of the undertaking in the contract.

*Otis Elevator,* 168 A.2d at 575. In *Otis Elevator,* we held that a company that contracted to inspect its customer's elevator could be liable in tort to an employee of the customer whose injury resulted from the company's negligent performance of its contractual obligation to inspect the elevators, regardless of any privity of contract. We concluded, "If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that the normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also to third persons, including the owner's employees." *Id.* at 575–76. We noted that the "orbit" of the duty is "measured by the nature and scope of [the] contractual undertaking." *Id.* at 576.

As noted by Plaintiff, the duty articulated in *Otis Elevator* has been formalized in Section 324A of the Restatement. In *Cantwell v. Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984), this Court first applied Section 324A of the Restatement, noting that "the essential provisions of this section have been the law in Pennsylvania for many years," citing *Otis Elevator.*

Although this Court has not specifically applied the holding in *Otis Elevator* or Section 324A to construction managers, we have nonetheless considered the potential duties owed to a contractor's employees arising from a construction manager's contractual safety obligations. In *Marshall,* the majority declined to find that the engineering firm owed a duty to the general contractor's injured employee, but it did not rule out the possibility that a duty would have arisen under a prior version of the contract assigning the firm a more active role in worksite safety. Indeed, the dissenting justices in *Marshall* would have found a duty to protect third parties from negligent performance of the applicable contract in *Marshall,* despite the firm's passive safety duties.

██ Accordingly, we reject Trumbull's suggestion that Section 324A cannot apply to negligent performance of a contractual inspection obligation because it would require this Court to overturn the longstanding precedent in *Otis Elevator*. Moreover, the plain language of Section 324A merely requires an undertaking to "render services to another," which we find to encompass the rendering of inspection services. As in *Otis Elevator*, we conclude that it was foreseeable that a failure to perform properly the active safety role assumed by Trumbull under its contract with PTC could result in injuries to the workers on the site. Accordingly, we hold that Trumbull owed a duty to perform its safety obligations under its contract with PTC so as not to injure Decedent.

██ The extent of the duty and the subsequent questions of breach and causation remain to be measured by "the nature and scope of [the] contractual undertaking." *Otis Elevator*, at 576. Given the questions of fact discussed previously regarding the scope of Trumbull's contractual obligations, we must defer again to the factfinder to determine whether there was a breach of Trumbull's duty to perform the obligations in a manner that would not injure Decedent, whether the alleged breach was a substantial factor in causing Decedent's injuries, as well as any other appropriate inquiries which may arise as the case proceeds on remand. As these issues are obviously not appropriate for summary judgment, we affirm the decision of the Commonwealth Court reversing the trial court's grant of summary judgment to Trumbull, and remand to the trial court for further proceedings. As stated above, we reverse the Commonwealth Court as to PTC's motion for summary judgment and reinstate that portion of the trial court's order.

Justice BAER delivered the Opinion of the Court.

Chief Justice CAPPY, and Justice CASTILLE, SAYLOR, EAKIN and BAER and Justice BALDWIN join Part I.

Justice NEWMAN, and Justice EAKIN and BAER and Justice BALDWIN join Part II.

Justice NEWMAN files a concurring and dissenting opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Chief Justice CAPPY and Justice CASTILLE join.

Justice NEWMAN, concurring and dissenting.

I join Part II of the Majority Opinion because I agree that Trumbull owed a duty to perform its safety obligations pursuant to its contract with the Pennsylvania Turnpike Commission (PTC) so as not to injure Decedent. I dissent, however, from Part I because I believe that PTC did owe New Enterprise Stone and Lime Company (NESL) employees a duty to ensure their safety while traveling upon the haul roads located on the construction site. In particular, I disagree with the Majority's application in Part I, Section 3 of the peculiar risk doctrine to the facts *sub judice*.

Pursuant to Section 31.00 of the contract between PTC and NESL (NESL–PTC Agreement), "Contractor [NESL] is solely responsible for the safety and welfare of his [sic] employees and for the protection of property.... [NESL] will furnish, erect, and maintain all barricades, warning signs and other protective devices to protect the public and employees from the job site safety hazards." (Reproduced Record (R.R.) at 228a.) The Section also provided that NESL was to develop a written safety program, which was to give "special attention" to "[f]all protection" and "[e]xcavation trenching cave-in protection." (*Id.* at 229.) Section 31.00 further states that PTC's engineer's "acceptance of [NESL]'s Safety Program shall not relieve or decrease the liability of [NESL] for Safety" and provides that

> [n]o provision of these contract documents shall act to make [PTC], the Engineer or any other party other than [NESL] solely responsible for safety. The Contractor Indemnity provided under Special Provision 30.00 entitled "Contractor's Insurance," shall apply to protect, indemnify, defend and hold harmless all parties referred to herein from any and all actions, damages, fines, suits and losses arising from

[NESL]'s failure to meet all safety requirements and/or provide a safe work site.

(*Id.* at 230.)

On February 6, 1996, PTC entered into a contract with Trumbull, pursuant to which Trumbull would act as the construction manager of the Project. The contract, entitled the Open–End Inspection Agreement (Trumbull–PTC Agreement), included the following language in Paragraph 12 of its "Technical Proposal" section:

Safety is of paramount importance to [Trumbull] in every activity we perform. On the basis that PTC will purchase and maintain a "Wrap-up" insurance program for this project, we will provide a Safety/Insurance Monitor to oversee the program. Our Safety/Insurance Monitor will be PTC's agent and representative in matters of construction safety and the project Wrap–Up Insurance Policy at the work site. We will review and approve contractor emergency procedures and site safety plans, interview applicants for contractors' Safety Representatives and make recommendations, monitor the Safety Representatives' performance, and monitor the contractors' compliance with O.S.H.A. and other applicable regulations at all work operations. Monitoring will be frequent and on a regular schedule. We will organize monthly walk-through safety tours with PTC, Insurance carrier, and contractor representatives and arrange and conduct other safety/insurance meetings as required. . . .

\* \* \*

We will continually monitor the performance of all contractors' workers and recommend removal from work any employee deemed unsuitable for reasons of safety and loss control.

(*Id.* at 258a–59.)

At approximately two o'clock on the afternoon of December 1, 1999, Decedent, an NESL employee, was driving a dump

truck on a haul road[1] on the Section 52H construction site when the truck fell down a twenty-eight-foot embankment and landed upside-down in approximately four feet of water, killing him.[2] On August 7, 2000, Decedent's widow, Jane A. Farabaugh (Appellee), individually and as administratrix of the estate of Decedent, filed wrongful death and survival actions against PTC and Trumbull (collectively, "Appellants") alleging, *inter alia*, that the haul road on which Decedent was driving collapsed and caused his truck to fall and that PTC and Trumbull were negligent for failing to ensure the safety of the road.

Following extensive discovery, on March 4, 2003, PTC and Trumbull each filed a Motion for Summary Judgment. The trial court granted both Motions on May 29, 2003, thereby dismissing Appellee's claims against Appellants. With respect to Appellee's negligence action against Trumbull, the trial court first determined that Trumbull did not owe a duty of care to Decedent because the evidence showed that: (1) "Trumbull had no control over the construction or maintenance of the haul roads;" (2) Trumbull "did not control the manner or method in which NESL performed its work;" and (3) "NESL was contractually responsible for safety on the job site." *Farabaugh v. Pa. Turnpike Comm'n,* No. GD 00–13, at

---

1. A haul road is an unpaved dirt road built into a hillside to allow construction vehicles to haul dirt and other materials from one part of a construction project to another.

2. Neither of the lower court Opinions provides further details of the accident. According to Appellants, however:

 [t]he accident occurred after [Decedent] had picked up a load, and was traveling uphill on the subject haul road. As he ascended the road, an NESL employee in a grader was coming down the road in the opposite direction. Although [Decedent] had the right of way, he began moving the truck over to the right. Another [truck] driver, Dennis Speck, was on another haul road above [Decedent] and witnessed [Decedent] moving further and further to the right, even though there was room to pass the grader. Mr. Speck then saw [Decedent] drive off the haul road.

 (Brief of Appellants at 12.) Appellee presented evidence at trial refuting that Decedent drove off the haul road and suggesting instead that the edge of the hill upon which the road was situated collapsed. Nevertheless, Appellee does not dispute the other details of the accident as described by Appellants above.

11 (C.P. Pa. Allegheny Dec. 5, 2003) (hereinafter "trial ct. Op.") In addition, the trial court held that, even if Trumbull did owe Decedent a duty, Trumbull would still be entitled to summary judgment because Appellee had "failed to produce any evidence from which a reasonable juror could find that Trumbull caused [Decedent]'s accident." *Id.* at 12.

Similarly, as for Appellee's negligence action against PTC, the trial court concluded that PTC did not owe a duty to Decedent based on the general rule of law that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the independent contractor. The trial court further determined that, in any event, sovereign immunity protected PTC from liability for the accident.

On appeal, a panel of the Commonwealth Court filed a Memorandum Opinion and Order on September 13, 2004, reversing the Order granting summary judgment in favor of Trumbull and PTC. With respect to the action against Trumbull, emphasizing that Trumbull's safety representatives had the power to stop work if they noticed safety problems, the Commonwealth Court concluded that the trial court erred in determining that Trumbull did not owe Decedent a duty of care. The Commonwealth Court also disagreed with the conclusion of the trial court that there was insufficient evidence to support a finding that Trumbull had caused the accident.

Similarly, as for the action against PTC, the Commonwealth Court concluded that the trial court erred in determining that PTC did not owe Decedent a duty because PTC retained control over Section 52H, at least through its agent Trumbull. The Commonwealth Court also disagreed with the trial court's conclusion that PTC was immune from suit because Appellee had alleged facts stating "a claim of injury due to a defective condition of land," thus rendering the so-called "real estate exception" to sovereign immunity applicable. *Farabaugh v. Pa. Turnpike Comm'n*, No., 859 A.2d 895, 2004 WL 2480100, 2086 C.D.2003, at 2–3 n. 1 (Pa.Cmwlth.Sept. 13, 2004).

On September 1, 2005, we granted allowance of appeal limited to the following two issues: (1) whether guidance by this Court is necessary because the scope of a construction manager's duty to a contractor's employee is an issue of first impression in the Commonwealth; and (2) whether the Commonwealth Court erred in holding that the Pennsylvania Turnpike Commission had a common law duty to warn the decedent's employer of any obvious conditions created by the general contractor. *Farabaugh v. Pa. Turnpike Comm'n*, 584 Pa. 160, 882 A.2d 1003 (2005).[3]

In Section 3 of Part I of its Opinion, the Majority concludes that the work that Decedent was performing at the time of the accident did not involve a "peculiar risk" or "special danger" within the meaning of Sections 416 and 427 of the *Restatement (Second) of Torts*. These Sections, which embody the so-called peculiar risk doctrine, are concerned not with the taking of routine precautions, which are the responsibility of the contractor but, rather, with:

special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions.... 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.

Restatement (Second) of Torts § 413 cmt. b; *id.* at § 416 cmt. b (declaring Comment b following Section 413 applicable to Sections 416 and 427).

Although the applicability of the peculiar risk doctrine is a mixed question of law and fact, the trial judge may decide the issue as a matter of law, but only in "clear cases." *Emery v. Leavesly McCollum*, 725 A.2d 807, 814 (Pa.Super.1999) (*en*

3. Importantly, we thereby denied allowance of appeal from the Commonwealth Court's reversal of the trial court's determinations that: (1) Appellee had produced insufficient evidence of causation on the part of Trumbull; and (2) sovereign immunity protected PTC from liability for the accident.

*banc* ) (citing *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604, 610 n. 6 (1991), *petition for allowance of appeal denied,* 530 Pa. 660, 609 A.2d 168 (1992)). Therefore, summary judgment in favor of PTC is inappropriate unless the peculiar risk doctrine is clearly inapplicable.

Comment (c) following Section 427 presents as an example of a "peculiar risk" one that is highly analogous to that posed by the allegedly unstable hillside in the case *sub judice:* "[A]n excavation in the highway, although it is not a highly dangerous activity and calls for no special skill, involves a recognizable risk that some one may fall into the excavation unless it is properly guarded." Similarly, the haul road presently at issue was flanked by embankments twenty-eight feet in height. (Trial ct. Op. at 2.) Furthermore, viewing the testimony in the light most favorable to Appellee as the non-moving party, the road had been built upon a coal seam, which is inherently unstable, and there was no berm where the accident occurred. (*See* R.R. at 504a.) Finally, the photographic evidence that Appellee submitted provides additional support for her contention that Decedent and other NESL employees subjected themselves to a "peculiar" or "special" risk by driving upon the haul road at issue. (*See id.* at 530a–33.)

Appellee thus presented sufficient evidence at trial to show that the peculiar risk doctrine is not clearly inapplicable to this case. Viewing the evidence in the light most favorable to Appellee, the risk of such an accident as Decedent's arose out of the place where his work was to be done and was of such a nature that a reasonable person would have recognized the need to take special precautions, such as constructing a berm, to prevent it. *See Restatement* § 413 cmt. (b). Therefore, I believe that Appellee succeeded in overcoming the general presumption against a duty on the part of a landowner toward the employees of a general contractor. Accordingly, I would hold that the Commonwealth Court did not err in reversing the determination of the trial court that PTC did not owe Decedent and other NESL employees a duty to ensure their safety while traveling upon the haul roads located on the Section 52H construction site.

As for Part II of the Majority Opinion, I agree that Appellee has met her burden of showing that Trumbull owed Decedent a duty of care to protect him and other NESL employees from harm on the haul roads upon which they drove. When viewed in the light most favorable to Appellee as the non-moving party, the evidence *sub judice* compels the conclusion that Trumbull undertook to inspect the haul roads. Pursuant to the Trumbull–PTC Agreement, Trumbull specifically agreed to "monitor the contractors' compliance with O.S.H.A. and other applicable regulations at all work operations." (R.R. at 259a.) The haul roads were subject to these inspections. (R.R. at 503a.)

Moreover, I join the Majority in "declin[ing] to provide a rigid definition of a construction manager or impose a correspondingly static duty on all construction managers." (Majority at 76, 911 A.2d at 1282.) In doing so, I recognize that, in granting allowance of appeal with respect to the instant claim, we framed the issue broadly in terms of the scope of a construction manager's duty toward the employee of a contractor. The Brief of Appellants, however, is essentially fact-dependent and fails to present a colorable argument in support of the recognition of a special rule applicable to the duties of construction managers. (*See* Brief of Appellants at 17 ("This case calls for a review of the role of a construction manager. Construction management has been defined as the process of professional management applied to a construction program from conception to completion for the purpose of controlling time, costs and quality. . . . This description of the role of a construction manager is consistent with the facts of this case as they relate to the relationship between [PTC] and Trumbull.") (internal quotation marks and internal citations omitted).) In the absence of such an argument, we must assume that a construction manager's duty, like that of any other construction professional, arises from its contract; therefore, the Majority properly declines to impose a special rule with respect thereto.

Accordingly, I would affirm the Order of the Commonwealth Court reversing the trial court's grant of summary judgment

in favor of Trumbull as well as PTC and remand the case for further proceedings involving both Appellants.

Justice SAYLOR, concurring and dissenting.

I join Part I of the majority opinion but respectfully differ with the majority's reasoning and holding as to Part II, concerning Trumbull Corporation's duties under its contract as construction manager.

The majority extensively recognizes the limitations on the duties of a landowner when it yields control of its property to an independent contractor for construction purposes. *See* Majority Opinion at 63–65, 911 A.2d at 1274–75 (citing, *inter alia, Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963)). Ultimately, the majority holds that no duty of care is placed on the owner relative to the independent contractor's employees, so long as the owner does not assume control of the work. *See id.* at 64–65, 911 A.2d at 1275. For public policy reasons, the majority further indicates that the retention of a construction manager and/or the monitoring of construction-site safety does not represent an assertion of control such as would support the imposition of a duty of care running to third parties. *See id.* As noted, I support the majority's reasoning and holding in these regards.

The majority's approach, however, takes a different turn with respect to the owner's delegated entitlement to coordinate and monitor work performance and safety at a construction site when considering the obligations of its construction manager. In a number of respects the majority suggests that, by acting as the owner's representative in this sort of coordination and monitoring, a construction manager is invested with a duty to third-party employees of an independent contractor that was not owed by the owner in the first instance. *See* Majority Opinion at 76, 911 A.2d at 1282.

From my perspective, the owner and its representative, here Trumbull as construction manager, should be treated similarly in the above respects, consistent with the common pleas court's approach. *See* Majority Opinion 70–71, 911 A.2d at 1278–79. Particularly given the sophisticated nature of

modern, large-scale construction, owners reasonably should be permitted to delegate their entitlement to coordinate and monitor various aspects of the work among multiple contractors and facilitate overall safety without creating new duties in their representatives. Further, I believe that this should hold true so long as no actual control is assumed over the methods of work and/or operative details beyond that which is inherent in coordination, compliance monitoring, and advancing overall safety consistent with the obligations of the independent contractors that are otherwise in force. As Appellants highlight, such an approach would be in line with that of a number of other jurisdictions. *See, e.g., Buccini v. 1568 Broadway Assoc.*, 250 A.D.2d 466, 673 N.Y.S.2d 398, 401 (N.Y.App.Div.1998) (affirming an award of summary judgment in favor of a construction manager and stating that "[t]he general duty to supervise the work and ensure compliance with safety regulations does not amount to supervision and control of the worksite such that the supervisory entity would be liable for the negligence of the contractor who performs the day-to-day operations" (citation omitted)).

Here, I believe that the nearest that Trumbull's contract with the Commonwealth comes to supporting a conclusion that the construction manager assumed control of the manner of an independent contractor's (NESL's) work is in the specification of an obligation to "develop, implement, maintain and monitor a comprehensive project safety/insurance program." From my perspective, however, absent further proof that this responsibility was exercised in a way that redirected the performance of NESL's work in some material fashion, such activities if performed by an owner would not represent the sort of control of the work or job site that would create new duties running to third parties. Rather, I regard them as consistent with an owner's residual prerogatives relative to its property, particularly where, as here, the independent contractor in control of the work has accepted full responsibility for job-site safety.[1] Again, since I do not believe that these

---

1. My position is in line with the following discussion of the principle investing those who control the work on a construction project with safety obligations:

activities would create duties in the owner running to third parties, it is my position that they should also not be deemed to create such obligations in the owner's representative retained to accomplish them.

For the above reasons, I would apply the rationale in Part I of the majority opinion both to the Turnpike Commission and to Trumbull, and, therefore, I would reinstate the judgment of the common pleas court in its entirety.

Chief Justice CAPPY and Justice CASTILLE join this concurring and dissenting opinion.

[T]he principle is intended to apply where there is retention of control over the operative detail of the work.... It is not enough that [the owner] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to [owners], but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way. *Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 609 A.2d 297, 301 (1992) (citing Restatement (Second) of Torts § 414). I believe that any duty in a construction manager should derive generally from the owner's retention of such control and employment of the construction manager to act as the owner's representative in exercising it.