J-A03020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KAREN RICE, INDIVIDUALLY AND AS ADMINISTRATOR TO THE ESTATE OF TIMOTHY RICE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| JUDY BOLLINGER, RICHARD GEORGE, S & S HOME BUILDERS, INC., HAROLD RICE AND/OR HAROLD RICE D/B/A HR RICE CUSTOM PAINTING AND/OR HAL RICE | |
| Appellees | No. 397 MDA 2016 |

Appeal from the Order Entered February 9, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No: 2013-08539

BEFORE: LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 26, 2017**

Appellant Karen Rice, Individually and as Administrator of the Estate of Timothy Rice, appeals from the February 9, 2016, order entered in the Court of Common Pleas of Luzerne County ("trial court"), granting summary judgment in favor of Judy Bollinger, Richard George, S&S Home Builders, Inc., Harold Rice and/or Harold Rice d/b/a HR Rice Custom Painting and/or Hal Rice (individually "Bollinger," "George," "S&S," and "HR," or "Harold," and collectively "Appellees"). Upon review, we affirm.

Briefly, on July 17, 2011, Timothy Rice ("Tim") was at a property owned by Bollinger to complete a painting project when he allegedly suffered

a fatal fall. As a result, his wife, Appellant, filed a complaint against Appellees, raising causes of action for negligence, wrongful death, survival action, and negligent infliction of emotional distress. Appellees eventually moved for summary judgment. In her motion for summary judgment, Bollinger argued that she could not be liable for Tim's death because Tim was on the property as a sub-contracted painter. HR and Harold, in their summary judgment motion, argued that, as a matter of law, Appellant could not prevail against them because they hired Tim as a sub-contractor to perform a paint project on Bollinger's property. Lastly, George and S&S in their summary judgment motion argued, *inter alia*, that they were not liable for Tim's death because they owed no legal duty of care to Tim, who was on Bollinger's property in his capacity as an independent painting contractor. On February 9, 2016, the trial court issued an order and opinion, granting Appellees' respective motions for summary judgment.

Appellant timely appealed. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal,[1] the trial court issued a Pa.R.A.P. 1925(a) opinion, captioned "Amended Opinion," wherein it

---

[1] We observe with disapproval that Appellant's Rule 1925(b) statement spanned over 12 pages and contained 72 assertions of error. We repeatedly have emphasized that a 1925(b) statement must be "sufficiently concise and coherent such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." ***Jiricko v. Geico Ins. Co.***, 947 A.2d 206, 210 (Pa. Super. 2008), ***appeal denied***, 958 A.2d 1048 (Pa. 2008).

- 2 -

J-A03020-17

slightly amended its February 9, 2016, opinion in support of Appellees' summary judgment motions.

On appeal,[2] Appellant raises three issues for our review, reproduced here verbatim:

[I.] Whether the trial court erred in determining as a matter of law [Tim's] status as an "independent contractor" where sufficient factual issues remain such that [Tim's] status is a factual question for the jury?

[II.] Whether the trial court erred in granting summary judgment as to each [Appellee]?

[III.] Whether the trial court erred in determining there was no duty owed to [Tim] by any [Appellee] as a matter of law where sufficient factual issues remain?

_____

[2] It is well-settled that

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting *Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa. Super. 2012)). Moreover, "[w]here the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers to survive summary judgment." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa. Super. 2014) (citation omitted). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.*

- 3 -

Appellant's Brief at 4 (unnecessary capitalization omitted).

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's issues on appeal. *See* Trial Court Opinion, 4/27/16, at 9-24. Accordingly, we affirm the trial court's February 9, 2016 order granting Appellees' respective motions for summary judgment. We further direct that a copy of the trial court's April 27, 2016 opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2017

Karen Rice, Individually and as : In the Court of Common Pleas
Administrator to the Estate : of Luzerne County
of Timothy Rice :
:
:
Plaintiff, :
:
: CIVIL ACTION - LAW
:
v. :
:
:
Judy Bollinger, Richard George, :
S&S Home Builders, Inc., Harold Rice :
and/or Harold Rice d/b/a HR Rice :
Custom Painting and/or Hal Rice :
Defendants : No. 8539 of 2013



FILED
PROTHONOTARY
LUZERNE COUNTY
2016 APR 27 PM 2:25

## AMENDED OPINION

### Background

The instant matter arises out of the death of Timothy Rice ("Tim Rice"), husband of Plaintiff Karen Rice, on July 17, 2011, related to a fall from the staircase at a property owned by Defendant Judy Bollinger ("Bollinger") and located at Lake Wallenpaupack, Pennsylvania (the "Property"). Prior to Tim Rice's death, Bollinger hired S&S Home Builders, Inc. ("S&S Home Builders") to construct a home on the Property. (Richard George Deposition, p. 106.) Bollinger was not involved in the construction of the house and did not complete any work on the house while construction was in progress. (Id. at 113-114.) Richard George ("George") is the sole owner and President of S&S Home Builders and has responsibility for supervising home builds which are completed by subcontractors for the Company. (Id. at 12, 16, 19.) This supervision involves observing the construction site after the completion of each subcontractor's work to

181

determine whether the site is ready for the next subcontractor. (Id. at 96-97.) According to George, during these visits, he observes the safety measures put in place by each subcontractor. (Id. at 98.) According to George, he takes his safety responsibility on all jobs seriously and believes that he should do everything to keep all subcontractors on a job safe. (Id. at 83-84.) If a subcontractor is not completing a job in a safe manner, S&S Home Builders will dismiss him/her from his/her duties. (Id. at 103.)

S&S Home Builders hired a subcontractor, Defendant Harold Rice d/b/a HR Rice Custom Painting ("Hal Rice"), to complete the painting at the home construction. S&S Home Builders did not provide Hal Rice with any supplies, and did not direct any safety protocols. (Id. at 19; Hal Rice Deposition, p. 101-104.) S&S Home Builders only provided Hal Rice with the location, needs, and deadline for the job. (Hal Rice Deposition, p. 101.) Neither George, nor S&S Home Builders, provided any instruction to Hal Rice on how the home should be painted. (Id. at 104.)

Hal Rice hired his brother, Tim Rice, to complete finishing and touch-up paint work to the home. (Id. at 104.) Hal Rice often hired subcontractors to assist with painting jobs. (Id. at 39-40.) He ordered the paint for the subcontractors and set deadlines for their work, but did not provide them with supplies or scaffolding. (Id. at 20, 39-40.) Prior to sending a subcontractor to a job, Hal Rice would often complete a walk-through inspection of the premises to determine how much paint would be

2

needed and whether the premises were ready for paint. (Id. at 49.) It was important for Hal Rice that subcontractors follow deadlines so that the next step of the construction could proceed. (Id. at 20.) Hal Rice had the ability to dismiss any of his subcontractors. (Id. at 37-38.) He required each subcontractor, including Tim Rice, to sign an independent contractor agreement, outlining the nature of the relationship between the parties. (Id. 44-45.) The agreement required that the independent contractor was solely responsible for safety and supplying his own insurance. (Id.) Tim Rice was paid by the hour and received a 1099 for each year in which work was subcontracted to him. (Id. at 52, 88-89.) Other subcontractors hired by Hal Rice were paid in different forms depending on the way Hal Rice was paid for the particular job. (Id. at 54.)

The building plans for the home contained a provision for the installation of a wooden hand rail along the staircase. Prior to the installation of the hand rail, Bollinger instructed George that she did not desire to use the wooden rail he had ordered, rather, she preferred a modern-looking rail. (Richard George Deposition, p. 119-122, 126-137, 174.) George informed Bollinger that he could not install such a rail and that he would reduce the original contract price by the price for the wooden rail and installation. (Id. at 159, 174.) Bollinger hired another construction company to install the modern railing. (Id. at 92, 158-159, 181.)

3

On July 17, 2011, the day of his death, Tim Rice and Karen Rice were at the Property completing a painting project. In the afternoon, Karen Rice went outside for a period of time. (Karen Rice Deposition, p. 110-121.) When she returned, her husband was laying at the bottom of the stairs in the home. (Id.) Karen Rice did not witness her husband fall from the stairs and does not know the cause of the fall. (Id.) The hand rail for the staircase had not yet been installed. (Id. at 200-201.) No temporary railing or scaffolding was constructed at the time of Tim Rice's fall. (Id.) In her deposition, Karen Rice stated that, on the date of the incident, she could see that there was no railing on the stairs. (Id. at 93.) Karen Rice also stated that when she visited the property with her husband a few days before the incident, it was noticeable that there was no railing on the stairwell. (Id. at 66-67.)

As a result of the death of her husband, Tim Rice, Karen Rice, both individually and as administrator of his Estate (collectively, "Plaintiffs"), filed an action based in negligence against various parties involved in the construction project at the Property. Through the course of the litigation, certain Defendants were removed and the only Defendants remaining are Bollinger, Hal Rice and/or Harold Rice d/b/a HR Rice Custom Painting, George, and S&S Home Builders (collectively, the "Defendants"). Each of the Defendants have filed motions for summary judgment which are currently before this Court.

4

## Standard of Review

The Pennsylvania Rules of Civil Procedure that govern summary judgment instruct, in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Pa.R.C.P. 1035.2(1) (2005). Pursuant to the Rules of Civil Procedure, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. Note to Pa.R.C.P. 1035.2 (2005). "In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." Fine v. Checcio, 582 Pa. 253, 265, 870 A.2d 850, 858 (citing Jones v. SEPTA, 565 Pa. 211, 772 A.2d 435, 438 (2001)). Still, the non-moving party may not rest upon the allegations or denials in the pleadings, rather, he/she must identify in the record evidence of a dispute of material fact. Pa.R.C.P., Rule 1035.3 (2003). Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. Marks v. Tasman, 527 Pa. 132, 134-135, 589 A.2d 205, 206 (1991).

## Law and Discussion

The matters before this Court are Defendant Judith Bollinger's Second Motion for Summary Judgment, Defendants Harold Rice and/or

Harold Rice d/b/a HR Rice Custom Painting's Motion for Summary Judgment, and Defendants Richard George and S&S Home Builders, Inc.'s Motion for Summary Judgment. For the reasons that follow, the various Motions for Summary Judgment are GRANTED.

## Independent Contractor Status of Tim Rice

Initially, to ascertain the law governing any duty owed to Tim Rice by any of the Defendants, it is necessary to consider whether, as a matter of law, Tim Rice was an employee or an independent contractor. "In any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff. Farabaugh v. Pennsylvania Turnpike Commission, 590 Pa. 46, 61, 911 A.2d 1264, 1272-1273 (Pa. 2006). Tim Rice's status as either an employee or an independent contractor implicates his relationship with each Defendant, and, thus, any duty which each may respectively owe. Importantly, if the facts related to one's status as either an independent contractor or an employee are not in dispute, then the determination is to be made by the court as a matter of law. Cox v. Caeti, 444 Pa. 143, 147, 279 A.2d 756, 758 (Pa. 1971) (internal citations omitted).

According to the Pennsylvania Supreme Court, "[i]n ascertaining whether a person is an employee or an independent contractor, the basic inquiry is whether such person is subject to the alleged employer's

6

right of control or right to control with respect to his physical conduct in performance of the services for which he was engaged." Id. The following factors will be considered by a court to determine whether an individual is an independent contractor: "...(1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment." American Road Lines v. Workers' Compensation Appeal Board, 39 A.3d 603, 611 (Pa. Cmwlth. Ct. 2012). While none of the factors mentioned are dispositive, the key factors are control over the work and the manner in which such work is performed. Id.

In the instant matter, it is clear Hal Rice did not exercise the type of control over Tim Rice necessary to classify him as an employee, rather than as an independent contractor. The undisputed facts of record demonstrate that Tim Rice was not subjected to any control by Hal Rice related to the painting services for which he was hired. See Cox, 444 Pa. at 147, 279 A.2d at 758. Hal Rice merely provided paint and set deadlines for Tim Rice. (See Hal Rice Deposition, p. 20, 39-40.) He did not provide any tools to Tim Rice for the completion of the job. (Id. at 101-104.)

7

Applying the factors which Pennsylvania courts have delineated for determining whether an individual is an employee or an independent contractor, Tim Rice's status as an independent contractor remains clear. See American Road Lines, 303 A.3d at 611. Tim Rice exercised control over his own work. See id. The parties were only responsible for the end result of the work completed. See id. As demonstrated through the independent contractor agreement and the performance of the parties, Tim Rice controlled the manner of the work and was responsible for his own safety. See id. Also, the nature of the work, painting, often involves similar subcontractor relationships between parties. See id. Painting is a skilled trade for which Tim Rice relied on his own expertise. See id. Tim Rice used his own equipment to complete the work at the Property. See id. Hal Rice provided 1099s to Tim Rice for taxation purposes in relation to his pay for work completed. See id. Hal Rice would dismiss any of his subcontractors from the job if the work was inadequate. See id. Although Tim Rice was paid an hourly rate, and both Tim and Hal Rice were in the business of painting, no one factor is dispositive. See id. The record as a whole reflects that Hal Rice did not control the manner in which Tim Rice completed his work. See id.

Finally, Plaintiff's argument that Tim Rice's status as either an employee or an independent contractor raises a genuine issue of material fact making entry of summary judgment improper is misplaced.

8

First, assuming, *arguendo*, Tim Rice was an employee of Hal Rice, then the instant matter would be preempted by the Pennsylvania Workers' Compensation Act and the suit could not stand in the Court of Common Pleas. Second, Plaintiff fails to recognize that Tim Rice's status as either an employee or an independent contractor is not a "fact" which remains in dispute, rather, it is a determination for this Court to make, as a matter of law, based on the undisputed facts of record relevant to his status. Cox, 444 Pa. at 147, 279 A.2d at 758. Plaintiff simply has failed to point to any remaining fact which is unresolved and would affect a determination by this Court of Tim Rice's status as either an employee or an independent contractor. See Pa.R.C.P., Rule 1035.3.

## **Non-Liability and Retained Control**

As a matter of law, none of the Defendants, a landowner and independent contractors, owed any duty of care to Tim Rice, a subcontractor, thus, summary judgment is appropriate in this negligence action.

### Liability of Landowner (Bollinger)

First, summary judgment in favor of Bollinger is proper because a landowner who entrusts work to an independent contractor owes no duty of care to others for the act or omission of the contractor or its servants. According to the Pennsylvania Supreme Court, "[f]or over 100 years, the accepted and general rule regarding liability in our Commonwealth has

9

been that a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees." Beil v. Telesis Construction, Inc., 608 Pa. 273, 289, 11 A.3d 456, 466 (Pa. 2011) (internal citations omitted). Further, "[t]his foundational law is based upon the long-standing notion that one is not vicariously liable for the negligence of an independent contractor, because engaging an independent contractor implies that the contractor is independent in the manner of doing the work contracted for." Id. Pursuant to Section 409 of the Restatement (Second) of Torts, "[e]xcept as stated in Sections 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409.[1]

Section 414 of the Restatement (Second) of Torts, as adopted in Pennsylvania, provides that "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts

---

[1] One exception to the general rule of non-liability for those who hire an independent contractor is the peculiar risk exception. However, this Opinion does not address the peculiar risk exception because it clearly does not apply to the facts of this case. Notably, the Pennsylvania Superior Court has stated: "There is nothing about the existence of a stairwell opening at a two-story building construction site that presents a peculiar risk to those working on the building. The risk of falling through such an opening is an incident of such work and the customary procedure for protecting such an opening to guard against a falling is well within the normal expertise of a qualified contractor. Mentzer v. Ognibene, 408 Pa.Super. 578, 592-593, 597 A.2d 604, 611 (Pa. Super. 1991).

10

§ 414; Beil, 608 Pa. at 289, 11 A.3d at 466. Pursuant to Comment c to

Restatement Section 414:

> In order for the rule stated in this Section to
> apply, the employer must have retained at least
> some degree of control over the manner in
> which the work is done. It is not enough that he
> has merely a general right to order the work
> stopped or resumed, to inspect its progress or to
> receive reports, to make suggestions or
> recommendations which need not necessarily
> be followed, or to prescribe alterations and
> deviations. Such a general right is usually
> reserved to employers, but it does not mean that
> the contractor is controlled as to his methods of
> work, or as to operative detail. There must be
> such a retention of a right of supervision that the
> contractor is not entirely free to do the work in his
> own way. Restatement (Second) of Torts § 414,
> Comment c.

A party may demonstrate the control necessary to invoke the

exception in two ways. Beil, 608 Pa. at 291, 11 A.3d at 467. First, the fact

that a landowner has retained control over the work to be completed

may be demonstrated through contractual provisions giving the

landowner control over the manner, method, and operative details of the

work. Id. Second, a party may show that the landowner exercised actual

control over the work. Id. According to the Pennsylvania Supreme Court,

"...our Commonwealth's case law has construed this exception narrowly."

Id. (See e.g. Farabaugh v. Pennsylvania Turnpike Commission, 590 Pa. 46,

911 A.2d 1264 (Pa. 2006); Hader v. Cement Mfg. Co., 410 Pa. 139, 189 A.2d

271 (Pa. 1963); See also Warnick v. The Home Depot U.S.A., Inc., 516 F.

11

Supp.2d 459, 468 (E.D. Pa. 2007)). In general, the question of retained control is one of fact for the jury. Id. However, the Pennsylvania Supreme Court has clearly stated that, when "...the evidence fails to establish the requisite retained control, the determination of liability may be made as a matter of law." Id.

In Beil v. Telesis Construction, Inc., the Pennsylvania Supreme Court affirmed the decision of the Superior Court directing that judgment notwithstanding the verdict be entered in favor of a landowner that did not retain sufficient control over the manner of the work of independent contractors to invoke the retained control exception to the general rule of non-liability. Beil, 608 Pa. 273, 11 A.3d 456. Lafayette College, the landowner, hired Telesis Construction, Inc. ("Telesis") as the general contractor for the renovation of its engineering building. Id. at 277, 458. Telesis subcontracted the roofing work for the project to Kunsman Roofing and Siding ("Kunsman") and Plaintiff David Beil ("Beil") was an employee of Kunsman. Id. at 277, 459. Lafayette College also separately contracted with Masonry Preservation Services, Inc. ("MPS") to complete stone work on the outer walls of the building.

While completing work on the roof flashing, Beil, who was using the MPS scaffolding, fell 30 feet and sustained head and neck injuries, a concussion, a fractured right shoulder, and a fractured heel. Id. at 278, 459. Based on the accident, Beil filed a personal injury lawsuit against

12

Lafayette College, Telesis, and MPS. Id. A jury verdict was later entered in favor of all Defendants; however, the Superior Court reversed the trial court and instructed that it enter judgment notwithstanding the verdict in favor of Lafayette College because it was not liable as a matter of law under any exception to the general rule of non-liability for a landowner who hires an independent contractor. Id. at 279, 460. Upon Plaintiffs' appeal, the Supreme Court affirmed the entry of judgment in favor of Lafayette College as a matter of law. See generally Beil, 608 Pa. 273, 11 A.3d 456.

Plaintiffs' arguments to the Supreme Court that Lafayette College retained sufficient control of the worksite to invoke the exception to the general rule of non-liability focused on the College's control over access and safety. Id. at 291, 467. Plaintiffs first argued that Lafayette College retained control over safety matters for Telesis, Kunsman, and MPS. Id. As proof of this control, Plaintiffs cited contractual provisions pursuant to which Telesis agreed to comply with Lafayette College's safety directions and rules. Id. To demonstrate control, Plaintiffs also pointed to facts involving the College's input on the placement of the scaffolding for safety purposes. Id. at 292, 467. Despite these facts, the Beil Court specifically held that the notion that safety-related conduct at a worksite could establish the requisite control to invoke the exception "...is contrary to consistent pronouncements by our Commonwealth's courts rejecting

13

such arguments as against sound public policy." Id. at 292, 468.

Referencing Farabaugh v. Pennsylvania Turnpike Commission, the Court explained that it recently rejected as a matter of law a safety-related control argument based on the employment of on-site safety representatives who could stop work. Id. at 293, 468 (citing Farabaugh v. Pennsylvania Turnpike Commission, 590 Pa. 46, 911 A.2d 1264 (Pa. 2006)). The Beil Court ultimately concluded "...that a property owner retaining a certain degree of authority over safety issues, such as supervising and enforcing safety requirements, and even imposing its own safety requirements at a work site, does not constitute control for purposes of imposing liability." Id.

Turning to the question of whether control over access is sufficient to invoke the exception, the Beil Court rejected Plaintiffs' arguments that control was established by contract provisions requiring compliance with Lafayette College's rules and that Telesis obtain permission to enter the building; the College's control over the placement of the scaffold; and, significant to the instant matter, the College's separate hiring of MPS, outside of the general contractor. Id. at 295, 469-470. Rejecting Plaintiffs' two theories of control, the Beil Court noted that one must differentiate control over the operational detail or manner of work and control over the building in which the work is conducted. Id. at 295-296, 470. The clear focus on control must be over the substantive performance of the work.

14

Id. at 296, 470. The Court highlighted that a landowner must maintain some control over an independent contractor in relation to access to the property and safety; however, such matters are tangential to the substantive work of the contractor and subcontractors over which control must be exercised to invoke the exception. Id. at 297, 470-471.

Recently, in a case similar to Beil, the Pennsylvania Superior Court reversed the trial court's denial of a landowner's motion for judgment notwithstanding the verdict because the landowner did not retain control over the manner of the work of its independent contractor. Nertavich v. PPL Electric Utilities, 100 A.3d 221 (Pa. Super. 2014). In Nertavich v. PPL Electric Utilities, an employee of an independent contractor, QSC, hired to paint PPL's electric transmission poles sued PPL after he sustained injuries from falling 40 feet off one of the poles. Id. at 223. The various facts the Nertavich Court considered in relation to the question of retained control are as follows: pursuant to the contract, QSC was required to follow PPL's detailed requirements for painting, including the type of paint and how to apply the paint; PPL had a field representative who served as a daily source of contact for procedures, quality assurance and safety; the PPL field representative could stop the contractor's work for safety violations; PPL limited access at times to the property; and, PPL provided ladders for QSC's use in performing at the worksite. Id. at 223 – 232, 235. The Nertavich Court concluded that PPL's quality specifications did not

15

demonstrate that it retained control over the worksite because such specifications were not related to Plaintiff's fall and that PPL had hired QSC as painting experts. Id. at 232. Also, the contract specified that QSC was responsible for its own climbing and personal protective equipment. Id. Although QSC requested ladders from PPL, PPL providing the ladders is not evidence that it retained control over the worksite because PPL did not mandate use of its ladders and only provided them when QSC was not able to obtain them otherwise. Id. at 238-239. Further, the Nertavich Court relied on the holding of the Beil Court in finding that any control PPL may have had over safety or access to the property was not sufficient, as a matter of law, to establish the control necessary to implicate the retained control exception. Id. at 232-233, 236.

In the instant matter, it is clear, as a matter of law, that Bollinger did not retain control over the work being conducted on the Property sufficient to overcome the general rule against liability of a landowner who employs an independent contractor. As a general rule, Bollinger is not liable in this action for Tim Rice's death because she hired S&S Home Builders as the general contractor for the construction project on the Property. See Beil, 608 Pa. 273, 11 A.3d 456. To impose liability on Bollinger, Plaintiffs must demonstrate that an exception to the general rule, such as retained control, applies. See id. As will be discussed below, the facts

16

demonstrate that, as a matter of law, Bollinger may not be held liable in the instant matter.

Taking the relevant facts in the light most favorable to Plaintiffs, the record reflects as follows: Bollinger entrusted the construction project to S&S Home Builders and George as the general, independent contractor; Bollinger did not complete any construction work on the Property; Bollinger approved building plans which included a wooden rail for the stairwell in the home; Bollinger instructed George and S&S Home Builders not to install the wooden rail; George informed Bollinger that he would not install the modern rail which she preferred over the wooden rail; S&S Home Builders reduced the contract price for the home by the cost for the purchase and installation of the wooden rail; and, Bollinger hired her own construction company to install the modern rail. A review of the relevant Pennsylvania law demonstrates that such facts fail, as a matter of law, to demonstrate that Bollinger retained control over the construction project on the Property.

First and foremost, the record reflects that Bollinger had no control over the manner in which S&S Home Builders, or any of the contractors, completed the work for which they were hired. See Restatement (Second) of Torts § 414; Beil, 608 Pa. 273, 296, 11 A.3d 456, 470. Bollinger was not a contractor and retained no control over the manner in which any of the contractors completed their work. Although Bollinger approved

17

the building plans, this is not control over the manner in which the contractors executed those plans. Additionally, Plaintiffs' arguments that Bollinger retained control of the construction site by ordering that the wooden rail not be installed and by hiring her own contractor to install the modern rail fail under the applicable case law. Simply changing the type of rail is not the type of necessary control contemplated by the law. Comment c to Restatement Section 414 specifically states that it is not sufficient to establish retained control that the individual has the right to order work stopped or prescribe alterations and deviations. Restatement (Second) of Torts § 414, Comment c. Bollinger's actions in relation to the installation of the rail reflect merely that she had the right to stop the installation and alter the chosen rail. Further, Bollinger's direct hiring of another contractor does not reflect retained control pursuant to Beil. In Beil, the Court clearly rejected a similar argument by Plaintiffs that retained control was established through the College's hiring of MPS outside of the general contractor. Indeed, it is evident in the instant matter that Bollinger did not even come close to exerting the type of control required by Beil and Nertavich to overcome the general rule of non-liability of a landowner.

18

*Liability of General Contractor and Subcontractor to another*
*Subcontractor (Harold Rice/HR Rice and Richard George/S&S*
*Home Builders)*

Finally, summary judgment in favor of George, S&S Home Builders, and Hal Rice is proper because, generally, "...a contractor is not liable for injuries resulting from work entrusted to a subcontractor." See Leonard v. Commonwealth, 565 Pa. 101, 105, 771 A.2d 1238, 1240 (Pa. 2001) (internal citation omitted). The law governing the issue of retained control for landowners, as discussed above, is the same as that which governs liability of contractors who entrust work to another independent contractor. See Beil, 608 Pa. 273, 11 A.3d 456; id.; Restatement (Second) of Torts § 409.

A recent decision from the United States District Court for the Eastern District of Pennsylvania demonstrates the application of the retained control exception to general contractors and subcontractors. In Yazujian v. Jacobs Project Management, the United States District Court for the Eastern District of Pennsylvania granted summary judgment in favor of a general contractor in relation to an injury sustained by an employee of one of its subcontractors. Yazujian v. Jacobs Project Management, 2013 WL 5948025 (E.D. Pa. 2013). Defendant Jacobs was the general contractor for a construction project at Amtrak's 30th Street Station in Philadelphia. Id. at *1. Jacobs subcontracted the demolition work on the project to Defendant M&G who employed Plaintiff as a construction

19

laborer. Id. Plaintiff was injured when he was standing on a ladder cutting away sections of a ceiling and a piece of the ceiling fell, knocking him off the ladder. Id. at *3. Plaintiff filed a complaint based in negligence against Jacobs and various other defendants. Relevant to the instant matter is Defendant Jacobs's motion for summary judgment.

The Yazujian Court began its analysis of the motion for summary judgment by stating:

> It is a well settled general rule in Pennsylvania that 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. Id. at *4 (citing Beil, 608 Pa. 273, 11 A.3d 456, 466 (quoting Restatement (Second) of Torts § 409)).

The Court then explained the retained control exception to the general rule against liability by citing Beil and Restatement (Second) of Torts Section 414. Id. at *4 - *5.

Turning to the facts of the case before it, the Yazujian Court first found the contractual language between Jacobs and M&G insufficient to establish that Jacobs retained control over M&G. Id. at *7 - *8. Pursuant to the contract, Jacobs could take whatever action it deemed necessary to prevent injury in the event that it obtained knowledge of a safety violation. Id. at *7. Relying on Beil and Leonard, the Court highlighted that control over safety is not control over the manner of the work and to impose liability over safety provisions would be contrary to public policy.

20

Id. The Court also found unconvincing general contract language that allowed Jacobs to stop work upon any failure by M&G to perform under the contract. Id. at *8.

The Yazujian Court also rejected any argument that Jacobs exercised actual control over M&G. Id. The action by Jacobs which the Court found unconvincing was the project manager's oversight of performance and safety. Id. Specifically, the Court explained that Jacobs did nothing to dictate to M&G the manner in which it proceed with its demolition work such that it led to Plaintiff's injuries. Id. at *9. Accordingly, the Court granted summary judgment in favor of Jacobs, the general contractor. Id.

### Richard George/S&S Home Builders

Applying the law to the facts of the instant matter, it is clear that neither George, nor S&S Home Builders, the general contractors, retained control over the work of either Hal Rice or Tim Rice, such that either could be liable for the death of Tim Rice at the construction site. To begin this analysis, it is necessary to clarify the roles of George and S&S Home Builders. Bollinger directly hired S&S Home Builders as the general contractor for construction of the home on the Property. George is the sole owner of S&S Home Builders and has responsibility for supervising each of its construction projects which are completed by subcontractors. Accordingly, both essentially served as the general contractor of the

21

Bollinger construction, with George acting as the agent to carry out the activities of S&S Home Builders. Thus, both are protected from liability for the actions of Tim Rice, a subcontractor. Taking the facts relevant to any liability by George and/or S&S Home Builders in the light most favorable to Plaintiffs, the record reflects as follows: S&S Home Builders is in the business of building homes through the hiring of subcontractors; S&S Home Builders subcontracted the painting job on the project to Hal Rice who then subcontracted certain aspects of the painting to Tim Rice; George supervised the building for S&S Home Builders; George inspected the site after each subcontractor completed work; George observed the safety measures utilized by each subcontractor; S&S Home Builders would dismiss any contractor not working in a safe manner; S&S Home Builders and George did not direct Hal Rice as to how the painting should be completed; S&S Home Builders did not provide supplies to Hal Rice; S&S Home Builders did not direct safety protocols to Hal Rice; and, upon hire, S&S Home Builders provided Hal Rice with the location, needs, and deadline for the job.

As independent contractors, both S&S Home Builders and George are protected from liability in the instant matter under the laws of this Commonwealth. See Leonard v. Commonwealth, 565 Pa. 101, 105, 771 A.2d 1238, 1240 (Pa. 2001) (internal citation omitted). The record reflects that neither George, nor S&S Home Builders retained control over the

22

painting of the home, such that either could be liable for Tim Rice's death. Although George oversaw the completion of each subcontractor's work, such oversight is insufficient to establish the type of control necessary to invoke the exception. See Restatement (Second) of Torts § 414, Comment c. Also, Pennsylvania Courts have continually held that control over safety is not sufficient for establishing retained control, and, to hold otherwise would be against public policy. See Nertavich, 100 A.3d at 232-233, 236; Yazujian, 2013 WL 5948025 at *7; Beil, 608 Pa. 273, 11 A.3d 456. Ultimately, the record lacks any facts demonstrating that either George or S&S Home Builders retained any form of control over the manner in which the painting work on the construction project was completed.

### Harold Rice/HR Rice

Likewise, the facts of the instant matter fail to establish that Hal Rice retained control over the manner in which Tim Rice completed his work such that liability may be imposed. Taking the facts relevant to any liability by Hal Rice in the light most favorable to Plaintiffs, the record reflects as follows: Hal Rice often hired subcontractors to assist with his painting jobs; Hal Rice ordered and supplied the paint to his subcontractors; Hal Rice did not provide supplies or scaffolding to his subcontractors; Hal Rice would inspect the premises to determine how much paint was needed and whether the premises were ready for paint; Hal Rice could dismiss his subcontractors; and, the contract which Hal Rice had his subcontractors

23

sign required that the subcontractor provide his/her tools and that the subcontractor was solely responsible for safety and insurance.

As discussed at length above, Hal Rice's ability to inspect the premises to determine the needs and status of the job fails as a matter of law to establish retained control. See Restatement (Second) of Torts § 414, Comment c. Further, it is evident that Hal Rice did not in any way dictate the manner in which Tim Rice completed his work. Contractually and in reality, subcontractors for Hal Rice used their own tools and took responsibility for their own safety. There are simply no facts demonstrating that Hal Rice controlled the performance of Tim Rice's work, an essential component to the retained control exception. See Nertavich, 100 A.3d 221; Yazujian, 2013 WL 5948025; Beil, 608 Pa. 273, 11 A.3d 456.

## Conclusion

Finally, Plaintiffs fail to highlight in the record any dispute of material fact that would make the entry of summary judgment in favor of Bollinger, George, S&S Home Builders, or Hal Rice/HR Rice improper. Based on Pennsylvania law as set forth at length above, Defendant Judith Bollinger's Second Motion for Summary Judgment, Defendants Harold Rice and/or Harold Rice d/b/a HR Rice Custom Painting's Motion for Summary Judgment, and Defendants Richard George and S&S Home Builders, Inc.'s Motion for Summary Judgment are hereby GRANTED.

(END OF OPINION)

24