J-A01037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN D'AMICO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COVANTA HOLDING CORPORATION AND COVANTA ENERGY AND COVANTA 4RECOVERY PHILADELPHIA, LLC | : | No. 692 EDA 2023 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered June 5, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  191101334

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED FEBRUARY 28, 2024**

Appellants, Covanta Holding Corp., Covanta Energy, LLC, and Covanta 4Recovery Philadelphia, LLC (collectively, Covanta), appeal from a $6,359,697.81 judgment entered against them by the Philadelphia County Court of Common Pleas on a jury verdict in favor of an employee of a contractor who was injured while performing work at a Covanta facility.  For the reasons set forth below, we affirm the trial court's denial of Covanta's motion for judgment notwithstanding the verdict (JNOV) but reverse the trial court's denial of its motion for a new trial and remand the case for a new trial.

_____

[*] Retired Senior Judge assigned to the Superior Court.

This case arose out of an accident that occurred on December 19, 2017 during work performed by Sirk Mechanical Services, Inc. (Sirk) for Covanta. In 2012, Covanta entered into a multi-year Facilities Goods and Services Agreement with Sirk (the Covanta-Sirk Agreement) under which Sirk was to perform work at Covanta facilities. N.T. Trial, 9/27/22 p.m., at 25-26; Covanta-Sirk Agreement. Under this contract, Covanta, which is in the business of conversion of waste to energy, hired Sirk on December 15, 2017 to dismantle tarping stations at a closed Covanta transfer facility at 3600 S. 26th Street, Philadelphia (the Facility). Trial Court Opinion at 1-2; N.T. Trial, 9/27/22 p.m., at 26-27, 35, 61-64; Sirk 12/14/17 Proposal; Covanta 12/15/17 Purchase Order. The tarping stations consisted of stairs and catwalks that were used to install tarps over trucks that hauled material in and out of the Facility. Trial Court Opinion at 2; N.T. Trial, 9/27/22 p.m., at 62-63.

On December 19, 2017, Justin D'Amico (Plaintiff), a welder employed by Sirk who had experience operating a forklift, was injured on this job when a tarping station catwalk fell off a forklift and landed on him, crushing his pelvis and hips, while he was on the ground cutting off a lower leg of the catwalk. Trial Court Opinion at 1-3; N.T. Trial, 9/27/22 a.m., at 70-71, 73, 75-77, 80-82; N.T. Trial, 9/30/22, at 179. The accident occurred because another Sirk employee, who was not a trained forklift operator, lifted the catwalk with a forklift at Plaintiff's request without properly securing it on the

- 2 -

forklift.  N.T. Trial, 9/27/22 a.m., at 70, 84-85; N.T. Trial, 9/27/22 p.m., at 81-83; N.T. Trial, 9/28/22 a.m., at 87; N.T. Trial, 9/28/22 p.m., at 40-41; N.T. Trial, 9/30/22, at 105.  Plaintiff suffered severe pain from the injury, was bedridden for months, and has some continuing pain, but following rehabilitation is able to walk.  N.T. Trial, 9/27/22 a.m., at 81, 89-99, 108-09. Plaintiff, who was 25 years old at the time of the accident, can no longer work as a welder as result of his injury, but is able to work part-time in some light duty jobs or work a sedentary job.  N.T. Trial, 9/27/22 a.m., at 99-105, 107-08, 116-17; N.T. Trial, 9/29/22, at 79-80; Young Video Dep. at 41-42, 45-46.

On November 12, 2019, Plaintiff filed this action against Covanta. Plaintiff alleged in his complaint that Covanta was liable for his injuries because it was negligent in failing to provide a safe job site, failing to adequately supervise Sirk, and failing to require Sirk to follow adequate safety procedures.  Plaintiff's Amended Complaint ¶¶25-30.  The case was tried to a jury from September 27, 2022 to October 3, 2022.   At trial, the parties introduced testimony from Plaintiff, Sirk's owner, another Sirk employee, and a Covanta operations manager concerning the accident and Covanta's control over the work that Sirk was performing at the Facility.  In addition, both parties called expert witnesses on liability and multiple expert witnesses testified on Plaintiff's damages, including Plaintiff's physician and an expert for Plaintiff on economic damages.  Plaintiff's economic damages expert opined that Plaintiff's damages for lost earning capacity were $814,000 to

$1,660,000 and that Plaintiff's future medical costs were $1,445,000. N.T. Trial, 9/29/22, at 104-07. This expert included in his calculation of Plaintiff's future medical costs a lifetime supply of medical marijuana and estimated its cost to be $10,200 per year. *Id.* at 115-16; Plaintiff's Ex. 12.

On October 3, 2022, the jury returned a verdict in favor of Plaintiff finding that Plaintiff was 27% negligent and Covanta was 73% negligent. N.T. Trial, 10/3/22, at 108-09, 111-14; Verdict Sheet at 1-2. The jury found that Plaintiffs' future medical damages were $1,450,000, that Plaintiff's lost earning capacity was $2,012,000, and that Plaintiffs' total damages, including those damages, past economic damages, and noneconomic damages of $4,277,840.41, were $8,219,175.08. N.T. Trial, 10/3/22, at 110-14; Verdict Sheet at 3. Covanta timely filed post-trial motions seeking JNOV on the ground, *inter alia*, that Covanta as a matter of law was not liable for injuries caused by its independent contractor, and, in the alternative, a new trial based on the jury instructions on liability for injuries caused by an independent contractor and various evidentiary rulings, or a remittitur. On January 31, 2023, the trial court denied Covanta's post-trial motions. On February 7, 2023, the trial court entered an order molding the jury's damage award to $5,999,997.81 based on Plaintiff's 27% negligence and awarding Plaintiff $359,700 in delay damages. Judgment against Covanta was entered thereafter in the amount of $6,359,697.81, and Covanta timely appealed that judgment.

In this appeal, Covanta raises two primary issues: 1) whether it was entitled to JNOV on the ground that the evidence was insufficient to show the type of control over Sirk's work that could support liability for injuries caused by an independent contractor and 2) whether it was entitled to a new trial based on the trial court's instructions to the jury on the type of control over Sirk's work that Plaintiff was required to prove. We conclude that the trial court properly denied Covanta's motion for JNOV, but that the trial court erred in denying a requested jury instruction on liability for injuries caused by an independent contractor that was necessary to prevent the charge as a whole from being inaccurate and misleading and that Covanta is entitled to a new trial on this ground.

Both of Covanta's primary issues turn on the same legal question of what evidence is sufficient to permit it to be held liable for the injuries in this case. The injuries to Plaintiff were caused by acts and omissions of employees of Sirk, an independent contractor hired by Covanta. Generally, a property owner who hires an independent contractor to work on its property is not liable for acts or omissions of the contractor or its employees. ***Beil v. Telesis Construction, Inc.***, 11 A.3d 456, 466 (Pa. 2011); ***Nertavich v. PPL Electric Utilities***, 100 A.3d 221, 227 (Pa. Super. 2014), ***aff'd without opinion***, 124 A.3d 734 (Pa. 2015). An exception to this rule of nonliability exists under Section 414 of the Restatement (Second) of Torts, which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability

- 5 -

for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Beil*, 11 A.3d at 466 (quoting Restatement (Second) of Torts § 414); *Nertavich*, 100 A.3d at 227 (quoting Restatement (Second) of Torts § 414). The property owner's retention of a general right to order work stopped or resumed, to inspect the contractor's work, to make suggestions or recommendations, or to prescribe alterations does not constitute retention of control sufficient to permit it to be held liable for injuries caused by its independent contractor. *Beil*, 11 A.3d at 466-67; *Nertavich*, 100 A.3d at 227. Rather, the property owner is liable only if it retains control over the method, manner, or operative detail of doing the work to the degree that the contractor is not free to do the work in its own way. *Beil*, 11 A.3d at 466-67, 470-71; *Nertavich*, 100 A.3d at 227, 236, 243.

In addition, the fact that the property owner retains some authority over safety, such as supervising and enforcing safety requirements, holding the right to stop work for safety violations, and imposing additional safety requirements at the work site, is not sufficient retention of control to support liability. *Beil*, 11 A.3d at 468-69; *Nertavich*, 100 A.3d at 230, 233-35. This restriction on basing liability on the property owner's authority over safety is required by public policy because imposing liability on a party for addressing safety would discourage the party hiring an independent contractor from taking steps to make the work safer. *Beil*, 11 A.3d at 468-69; *Farabaugh*

*v. Pennsylvania Turnpike Commission*, 911 A.2d 1264, 1275 (Pa. 2006); *Nertavich*, 100 A.3d at 230, 234-35.  Specifications or instructions by the property owner that have nothing to do with the accident that injured the plaintiff also do not constitute control sufficient to support liability. *Nertavich*, 100 A.3d at 230-32; *see also Main v. Columbia Gas Co.*, No. 1470 WDA 2018, slip op. at 11-13 (Pa. Super. Sept. 9, 2019).

Whether the trial court erred in denying Covanta's motion for JNOV is a question of law subject to our plenary review.  *Shamnoski v. PG Energy*, 858 A.2d 589, 593 (Pa. 2004).  There are two bases on which JNOV may be granted: (1) where the movant is entitled to judgment as a matter of law and (2) where the evidence is such that no two reasonable minds could disagree that the judgment should have been in favor of the movant.  *Linde v. Linde*, 220 A.3d 1119, 1140 (Pa. Super. 2019); *Nertavich*, 100 A.3d at 226.  In determining whether either of these bases for JNOV has been established, this Court must view the evidence in the light most favorable to the party that prevailed at trial.  *Linde*, 220 A.3d at 1140.

Whether the property owner retained a degree of control over the method of doing the work sufficient to support liability may be proved by two types of evidence, the terms of the contract between the property owner and contractor and evidence of the actual degree of control exercised by the property owner during the contractor's work.  *Beil*, 11 A.3d at 467; *Nertavich*, 100 A.3d at 228.  The evidence at trial on this issue consisted of

two contract documents, the Covanta-Sirk Agreement and the purchase order for the December 2017 job at issue, and the testimony of four witnesses concerning what occurred on the job, Plaintiff, another Sirk employee who worked on the December 2017 job, Sirk's owner, and the Covanta operations manager.[1]

Nothing in the contract documents was sufficient to show that Covanta retained control over the method of Sirk's work to the degree that Sirk was not free to do the work in its own way. The contract that governed all of Sirk's work for Covanta provided that Sirk was responsible for the means and methods of performing its work, that Sirk was responsible for supervising its work and workers, and that Sirk's employees were not under Covanta's supervision. Covanta-Sirk Agreement §§ 3(d), 6(b), 10(a), (c). That contract also gave Covanta authority to inspect Sirk's work, required Sirk to comply with and enforce Covanta's safety requirements, and gave Covanta authority to take corrective action or terminate the contract if Sirk failed to comply with

_____

[1] Although Plaintiff's safety expert and Covanta's expert also testified on whether, in their opinion, Covanta retained control of the means and methods of doing the work, N.T. Trial, 9/28/22 p.m., at 41-42; N.T. Trial, 9/30/22, at 151, those expert opinions are irrelevant to the issue whether Covanta is entitled to JNOV. The issue of whether control is sufficient to impose a duty on the property owner and permit liability is a legal question based on the evidence concerning the contract and its performance, and such expert testimony is not a basis for finding that the evidence of control is sufficient to go to a jury. **Nertavich**, 100 A.3d at 228, 243; **see also Beil**, 11 A.3d at 464, 471-72 (owner not liable as a matter of law despite expert testimony that the owner maintained control over job site and contractor's performance).

its safety requirements or if Covanta concluded that Sirk was performing the work in an unsafe manner. *Id.* §§ 1, 6(d), 10(b)-(d), (j), 11 & Appendices C & E. Neither the right to inspect the work nor safety requirements constitute the type of control sufficient to make a property owner liable for the negligence of its contractor, however. *Beil*, 11 A.3d at 466-69; *Nertavich*, 100 A.3d at 227, 230, 233-35. The documents setting forth the work to be performed on this specific job contain no detailed sequence of how Sirk was to perform the work and no direction by Covanta concerning the work. Rather, those documents only set forth a brief list of what Sirk proposed to do to disassemble the tarping stations with no specification by Covanta as to any detail of how Sirk was to do the work. Sirk 12/14/17 Proposal; Covanta 12/15/17 Purchase Order.

The testimony of the Covanta operations manager was likewise insufficient to show the type of control over Sirk's method of doing its work necessary to support liability. This Covanta representative, who hired Sirk for December 2017 job but was not present at the time of the accident, testified that Covanta approves the work that Sirk says that it will be doing but does not tell Sirk what methods to use or how to do the work and does not supervise Sirk employees. N.T. Trial, 9/27/22 p.m., at 40, 60; N.T. Trial, 9/28/22 a.m., at 8, 22. He testified that he and Sirk's owner discussed Sirk's methods for performing the December 2017 work at the Facility on December 14, 2017, before Covanta hired Sirk for the job, and that he was satisfied with Sirk's

- 9 -

proposed method of doing the work. N.T. Trial, 9/27/22 p.m., at 63-67, 69-71, 75-76. The Covanta operations manager testified that he did not direct Sirk on what steps to take in performing the work on this job or what equipment to use. N.T. Trial, 9/28/22 a.m., at 11-12. He testified that he knew a forklift would be used on this job, but that Sirk represented that it would have qualified forklift operators. N.T. Trial, 9/28/22 a.m., at 9-10.

The Covanta operations manager also testified that Covanta imposes safety requirements on its contractors and that Covanta had the authority to require Sirk to correct unsafe conditions and order Sirk to stop work if Covanta concluded that Sirk was not taking sufficient safety precautions. N.T. Trial, 9/27/22 p.m., at 27, 29-33, 36-39, 55-57, 60. That, as noted above, is insufficient to permit a jury to find liability of an independent contractor's negligence. *Beil*, 11 A.3d at 468-69; *Nertavich*, 100 A.3d at 230, 233-35.

In contrast, the three other witnesses testified that Covanta exercised greater control over the manner in which Sirk did its work on this job. Sirk's owner testified that Covanta had some control over the way Sirk performed its work on all of its Covanta jobs, although it varied from job to job. N.T. Trial, 9/28/22 a.m., at 71-72. He testified that Covanta always met with him at the job site and went over the plan for the day. *Id.* at 71. Sirk's owner testified with respect to the December 2017 job that he did not recall specifically his communications with Covanta before being awarded the job, but that he would have discussed how the job was to be done safely, that "I

would go over step-by-step of how things were going to proceed, and how much men go on the job, what equipment we were going to bring, how we were going to proceed with the job," and that the scope and manner of work to be performed was reviewed and discussed. *Id.* at 77, 79-81. Sirk's owner testified that on December 19, 2017, at the start of the job, he went over with the Covanta representative the scope of the work. *Id.* at 84. Sirk's owner testified that most of the control over how the work for Covanta was to be performed was Sirk's, but that Covanta had some control over how this job was done and the means or method of how Sirk did the work. *Id.* at 78, 85. Sirk's owner, however, did not identify the aspects of the work over which Covanta maintained control or testify that Covanta prescribed how Sirk was to remove the catwalks or directed Sirk to lift the catwalks with a forklift. *Id.*

Plaintiff testified that on the morning of the accident he heard Sirk's owner and the Covanta operations manager talking about the job and heard the Covanta operations manager talk about how the tarping stations were to be disassembled, including when the cutting that Plaintiff was doing at the time of the accident was to be performed and the fact that a forklift would be used. N.T. Trial, 9/27/22 a.m., at 58-60, 63-67, 71-74. The other Sirk employee who worked on the December 2017 Covanta job testified that he heard the Covanta representative tell Sirk's owner that Sirk was to take the catwalks down, lay them on their side, and cut the legs off so the catwalks

could be put on a flatbed to be transported to another site. N.T. Trial, 9/28/22 a.m., at 34-36, 40-41.

This testimony, in combination, was sufficient to permit the jury to find that Covanta directed how the work involved in the accident was to be performed and that Covanta did not merely impose safety requirements but controlled Sirk's method of doing the work to the degree that Sirk was not free to do the work in its own way. The evidence was therefore sufficient for Covanta to be held liable for Plaintiff's injuries. *Beil*, 11 A.3d at 466-67; *Nertavich*, 100 A.3d at 227. Accordingly, the trial court did not err in denying Covanta's motion for JNOV.[2]

In its second issue, Covanta contends that the trial court committed reversible error in its instructions to the jury on whether Covanta retained sufficient control over Sirk's work to be liable for Sirk's negligence. The trial court's only instructions to the jury on this issue were the following:

> A land owner is subject to liability if an owner retains in control over the manner in which the work is done on its premise[s].

---

[2] The trial court based its denial of the motion for JNOV on different reasoning, relying in substantial part on the evidence that Covanta imposed safety requirements on Sirk and retained the authority to enforce them. Trial Court Opinion at 8-9. That was error, as the law is clear that as a matter of public policy, a property owner's imposition of safety requirements cannot be a sufficient basis for imposing liability on it for the negligence of its independent contractor. *Beil*, 11 A.3d at 468-69; *Nertavich*, 100 A.3d at 230, 233-35. We are not, however, bound by the trial court's analysis, as our review of a ruling on a motion for JNOV is plenary. In addition, we may affirm a trial court on grounds different than those on which it based its decision. *Livingston v. Greyhound Lines Inc.*, 208 A.3d 1122, 1135 n.8 (Pa. Super. 2019); *In re Estate of Rood*, 121 A.3d 1104, 1105 n.1 (Pa. Super. 2015).

> One who entrust[s] work to be done by the contractor, but retains control for any part of work is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
>
> \*　　　　\*　　　　\*
>
> The definition of retain control. Retain control can be demonstrated in two ways. First, evidence of contractual provisions giving a defendant any control over the manner, method, and operative details of the work. Or secondly, evidence that the defendant exercised any control over the manner, method, means, or operative details in which the work was performed.

N.T. Trial, 10/3/22 at 86, 95 (emphasis added). Covanta requested that the trial court instruct the jury that retaining some authority over safety and enforcing safety requirements is not sufficient to prove the retained control that must be shown to impose liability for injuries caused by an independent contractor. N.T. Trial, 9/30/22, at 195-97; N.T. Trial, 10/3/22 at 8-11; Covanta Proposed Jury Instruction No. 48. The trial court denied this request for charge. N.T. Trial, 10/3/22 at 11.

"[T]he purpose of a jury charge is to clarify the legal principles at issue and guide the jury in its deliberations." *Moffitt v. Miller*, 302 A.3d 1219, 1229 (Pa. Super. 2023). We review a claim of error in a trial court's jury instructions to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. *Lageman v. Zepp*, 266 A.3d 572, 589 n.78 (Pa. 2021); *McManamon v. Washko*, 906 A.2d 1259, 1271 (Pa. Super. 2006). Error in a jury charge is grounds for a new trial if the charge as a whole is inadequate or unclear or has a tendency

to mislead or confuse rather than clarify a material issue. *Lageman*, 266 A.3d at 589 n.78; *Tincher v. Omega Flex, Inc.*, 180 A.3d 386, 397-98 (Pa. Super. 2018); *Wood v. Smith*, 495 A.2d 601, 604 (Pa. Super. 1985), *appeal dismissed as improvidently granted*, 518 A.2d 266 (Pa. 1986).

Here, the jury charge completely omitted any instruction on the issue on which Covanta sought an instruction, whether retention of some authority over safety and enforcement of safety requirements can constitute the kind of retention of control sufficient to find liability. That omission was an error of law on the central liability issue in this case. As discussed above, the law is clear that a property owner's retaining of some authority over safety, such as supervising and enforcing safety requirements, retaining the right to stop work for safety violations, and imposing additional safety requirements at the work site, is not a sufficient retention of control to support liability. *Beil*, 11 A.3d at 468-69; *Nertavich*, 100 A.3d at 230, 233-35. Without any instruction on this issue, the jury charge was misleading and inaccurate, as it instructed that any control over the manner, method, or operative details of any part of the work was sufficient for liability, N.T. Trial, 10/3/22 at 86, 95, and imposing and enforcing safety requirements would be understood to be control of the manner, method, or details over how the work was done unless specifically excluded as a basis for liability.

Moreover, the failure to charge the jury that it could not find Covanta liable based on evidence that Covanta retained some control over safety was

particularly prejudicial to Covanta. Plaintiff repeatedly introduced evidence of Covanta authority over safety and Covanta safety requirements and argued that this showed that Covanta retained control over how the work was performed. N.T. Trial, 9/27/22 a.m., at 17, 20-22; N.T. Trial, 9/27/22 p.m., at 28-34, 37-39, 46-47, 55-60, 72; N.T. Trial, 9/28/22 p.m., at 22-23, 32-35, 42; N.T. Trial, 9/30/22, at 123-27, 131-32, 147-48; N.T. Trial, 10/3/22, at 16, 22, 26-27. Because the trial court's failure to give Covanta's requested jury instruction made the jury charge as a whole misleading and prejudiced Covanta, the trial court's denial of Covanta's motion for a new trial was reversible error.

In addition to the above two issues, Covanta has also raised a number of other claims for a new trial, molding of the verdict, a new trial on damages, or a remittitur on various grounds. Since the case must be remanded for a new trial, we need not address these other issues to resolve this appeal. Moreover, almost all of these issues either turn on the precise evidence at trial or are based on the jury's verdict and may not arise again at the retrial of this case in the same way. One of these issues, Covanta's contention that the cost of medical marijuana cannot be recovered as medical expense damages, however, will necessarily arise at retrial of this case. We therefore address that issue at this time in the interest of judicial economy.

Covanta argues that the cost of medical marijuana is not recoverable as damages because Section 2102 of the Medical Marijuana Act, 35 P.S. §

10231.2102, limits the obligation to pay for medical marijuana and marijuana is illegal under federal law. Appellant's Brief at 51. Neither of these arguments has merit.

Section 2102 of the Medical Marijuana Act provides: "Nothing in this act shall be construed to require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide coverage for medical marijuana." 35 P.S. § 10231.2102. An award of medical marijuana damages against Covanta cannot violate Section 2102 because Covanta is neither an insurer nor a health plan and the medical marijuana claim is a tort damages award, not a direction to provide insurance coverage. Indeed, ordering a workers' compensation insurer to reimburse a claimant for medical marijuana does not violate Section 2102. ***Fegley v. Firestone Tire & Rubber***, 291 A.3d 940, 949-52 (Pa. Cmwlth. 2023) (*en banc*); ***Appel v. GWC Warranty Corp.***, 291 A.3d 927, 933-35 (Pa. Cmwlth. 2023) (*en banc*).[3]

Ordering reimbursement for the cost of medical marijuana does not violate federal law, 21 U.S.C. § 841(a), because reimbursing marijuana costs does not constitute manufacture, distribution, dispensing, prescribing, or possession of marijuana. ***Fegley***, 291 A.3d at 953-54; ***Appel***, 291 A.3d at

---

[3] Although we are not bound by decisions of the Commonwealth Court, they are persuasive authority where they do not conflict with any decisions of this Court or our Supreme Court. ***IRS v. Blue Mountain Ministry, Inc.***, 265 A.3d 824, 828 n.3 (Pa. Super. 2021); ***Petow v. Warehime***, 996 A.2d 1083, 1189 n.1 (Pa. Super. 2010).

935. Thus, a claimant may recover the cost of medical marijuana as medical treatment under the Workers' Compensation Act. **Fegley**, 291 A.3d at 953-54; **Appel**, 291 A.3d at 935-36. Although one non-Pennsylvania court has held that medical marijuana costs cannot be awarded as medical cost damages in a civil action, **Hemphill v. Liberty Mutual Insurance Co.**, 2013 WL 12123984, at *2-*3 (D.N.M. Mar. 28, 2013), that court based its ruling that medical marijuana damages cannot be awarded on its conclusion that reimbursement for medical marijuana violates federal law, a conclusion that has specifically been rejected by the Commonwealth Court in **Fegley** and **Appel**.[4] We see no reason to depart from our sister court's analysis of this issue.

For the foregoing reasons, we conclude that the evidence at trial was sufficient to prove that Covanta retained the control over the method of its contractor's work and could therefore be liable for Plaintiff's injuries, but that the trial court erroneously instructed the jury on this central issue in the case. We therefore affirm the trial court's denial of Covanta's motion for JNOV, but reverse its denial of Covanta's motion for a new trial and vacate the judgment and remand this case for a new trial.

---

[4] Covanta also argues that the cost of medical marijuana could not be awarded as damages because the evidence at trial was insufficient to support a finding that it was a reasonable and necessary future medical expense. We do not rule on that issue, as the sufficiency of the evidence to support this element of damages will depend on the evidence introduced when this case is retried.

Judgment vacated. Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/28/2024